**Ex parte Yekaterina TANKLEVSKAYA, Applicant.**

**No. 01–10–00627–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 26, 2011.

---

**11.** *McNeil, supra,* at 182 n. 3, 111 S.Ct. 2204

**12.** *See* note 9, *ante.*

**13.** *Gobert, supra,* at 893.

Roberto M. Hinojosa, Houston, TX, for Appellant.

Mandy Goldman Miller, Assistant District Attorney, Patricia R. Lykos, Harris County District Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

In 2009, applicant, Yekaterina Tanklevskaya, a legal permanent resident of the United States, pleaded guilty to the Class B misdemeanor offense of possession of less than two ounces of marijuana and did not appeal her conviction.[1] Applicant then traveled outside of the country to visit her father. Upon her return to the United States, Immigration and Naturalization Services officials detained her and subsequently initiated removal proceedings against her. Shortly after the United States Supreme Court decided *Padilla v. Kentucky* in March 2010,[2] applicant filed an application for a writ of habeas corpus, arguing that her guilty plea was involuntary because her plea counsel failed to inform her of the immigration consequences of a guilty plea. The trial court denied habeas corpus relief. In one issue, applicant contends that the trial court erred in denying habeas relief because, pursuant to *Padilla*, her plea counsel provided ineffective assistance when he failed to specifically inform her that a guilty plea would render her presumptively inadmissible upon leaving and attempting to re-enter the United States.

We reverse the judgment of the trial court and grant habeas corpus relief.

## Background

In April 2009, the State charged applicant with the Class B misdemeanor offense of possession of less than two ounces of marijuana. Applicant pleaded guilty, and the trial court assessed punishment at four days' confinement in the Harris County Jail and a six-month suspension of her driver's license.[3] Applicant did not directly appeal her conviction, and she successfully completed the terms of her punishment.

Shortly after pleading guilty, applicant, a Ukrainian citizen and legal permanent resident of the United States, left the country to visit her father in Germany. Upon her return to the United States, immigration officials detained applicant in Memphis, confiscated her permanent resident card, and allowed her to return to Houston pending removal proceedings. The Immigration and Naturalization Service subsequently initiated removal proceedings against applicant on the ground that her conviction rendered her "inadmissible" to the United States. *See* 8 U.S.C.S. § 1182(a)(2)(A)(i)(II) (2008) (stating that alien convicted of violating any state law relating to controlled substances is inadmissible).

In March 2010, the United States Supreme Court decided *Padilla v. Kentucky*, which addressed whether defense counsel's failure to provide information regarding the immigration consequences of a guilty plea constitutes ineffective assistance of counsel under *Strickland v. Washington*

---

1. TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (Vernon 2010).

2. —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

3. The original case is *State of Texas v. Yekaterina Tanklevskaya*, No. 1594654 (County Criminal Court at Law No. 11, Harris County, Tex., Apr. 22, 2009).

and therefore renders a guilty plea involuntary. *See Padilla v. Kentucky,* —— U.S. ——, 130 S.Ct. 1473, 1482–84, 176 L.Ed.2d 284 (2010); *Strickland,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). The Padilla Court held that defense counsel "must inform her client whether his plea carries a risk of deportation" to satisfy the requirements of the Sixth Amendment. *Padilla,* 130 S.Ct. at 1486. The Court clarified that when the relevant immigration law is "not succinct and straightforward," defense counsel need only "advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences"; however, when the deportation consequences are "truly clear," counsel has an "equally clear" duty to give correct advice. *Id.* at 1483.

On May 27, 2010, applicant filed an application for a writ of habeas corpus alleging that her plea counsel did not sufficiently advise her of the immigration consequences of her guilty plea and therefore provided ineffective assistance under *Padilla,* rendering her guilty plea involuntary. At the habeas hearing, neither the State nor applicant called applicant's plea counsel as a witness, but both parties stipulated that he would testify that he informed applicant of the general immigration consequences to a guilty plea, but he did not specifically tell her that, upon leaving and attempting to return to the United States, she would be presumptively inadmissible. Nor did he tell her that she could not request a waiver of the inadmissibility provision because the information in the original case did not specify that the quantity of marijuana allegedly possessed was less than thirty grams.[4] Both parties agreed that applicant signed the usual "plea paperwork," which includes the acknowledgement that "I understand that upon a plea of guilty/ *nolo contendere* ... that if I am not a citizen of the United States my plea of guilty/ *nolo contendere* may result in my deportation, exclusion from admission to this country, or denial of naturalization under federal law," and that the trial court admonished applicant regarding the general immigration consequences before accepting her guilty plea pursuant to Code of Criminal Procedure article 26.13(a).

At the hearing, applicant testified that, when she met with her plea counsel, she informed him that she planned to visit her father in Germany and he confirmed her belief that she could not travel outside of the United States while on probation. Plea counsel informed applicant that an additional option to probation would be to plead guilty and receive a suspension of her driver's license. According to applicant, plea counsel did not tell her that if she left the country, she would be inadmissible and subject to removal proceedings upon her return to the United States. Applicant also testified that counsel never discussed how the State's failure to specify in the information the precise quantity of marijuana that she allegedly possessed affected her ability to obtain a waiver of the inadmissibility provision.[5] Applicant stat-

4. *See* 8 U.S.C.S. § 1182(h) (2008) (stating that Attorney General may waive application of inadmissibility provision if alien convicted of "a single offense of simple possession of 30 grams or less of marijuana").

5. Section 1182(h) allows a waiver of inadmissibility if the amount of marijuana allegedly possessed is thirty grams or less. 8 U.S.C.S. § 1182(h) (2008). Health & Safety Code section 481.121(b)(1) classifies possession of *two ounces* or less of marijuana as a Class B misdemeanor. TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (Vernon 2010). Two ounces is larger than thirty grams, so while "thirty grams or less" is necessarily less than two ounces, the converse is not true.

ed that had she known that she would be inadmissible upon her return to the country, she "would [not] have accepted the plea as [she] did." When asked whether she "would have decided maybe to go to trial," applicant responded that she "would have thought about it" and "would have probably done so." The trial court then had a brief discussion with defense counsel regarding how applicant's situation would be different if she had accepted deferred adjudication. Defense counsel indicated that applicant would not be facing removal proceedings if she had accepted, and the trial court had approved, deferred adjudication.

On cross-examination, applicant conceded that her plea counsel informed her of the "general possibilities" regarding the immigration consequences of a guilty plea by a noncitizen. Applicant also admitted that she signed the "green sheet," which states the consequences of a plea of guilty or nolo contendere and includes a warning that a conviction may result in deportation or inadmissibility to the country. Applicant also had the following exchange with the prosecutor:

> State: You testified earlier that would have possibly thought about a jury trial had you known about other consequences; is that correct?
>
> Applicant: That is absolutely correct. I would have certainly weighed my options differently had I known what would result by taking the trip outside of the country.

Applicant further acknowledged that she knew that she was voluntarily waiving her right to a jury trial when she signed the plea documents and entered her guilty plea.

The trial court subsequently denied habeas corpus relief. Applicant did not request findings of fact and conclusions of law.

## Standard of Review

██ An applicant seeking habeas corpus relief based on an involuntary guilty plea must prove her claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App.2006) (citing *Ex parte Morrow*, 952 S.W.2d 530, 535 (Tex.Crim.App.1997)). When reviewing a trial court's ruling on a habeas corpus application, we view the evidence presented in the light most favorable to the trial court's ruling, and we must uphold that ruling absent an abuse of discretion. *Id.* (citing *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App.2003), *overruled on other grounds, Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex.Crim.App.2007)). We afford almost total deference to a trial court's findings in habeas proceedings, particularly when those findings are based upon an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex.Crim.App.2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex.Crim.App. 2004)); *see also Ex parte Wheeler*, 203 S.W.3d 317, 324 n. 23 (Tex.Crim.App.2006) (noting that we should also defer to trial court's "implicit factual findings" that support trial court's ultimate ruling); *Peterson*, 117 S.W.3d at 819 (noting same). We similarly defer to the trial court's application of the law to the facts if that resolution turns upon credibility and demeanor determinations. *Peterson*, 117 S.W.3d at 819. If the resolution of the ultimate question turns on an application of law, we review the determination de novo. *Id.*

## Ineffective Assistance of Counsel

In her sole issue, applicant contends that the trial court erred in denying habeas corpus relief because her plea counsel rendered ineffective assistance under *Strickland v. Washington* and *Padilla v. Kentucky.* Applicant specifically complains

about her plea counsel's failure to inform her that (1) her guilty plea would make her inadmissible to return to the United States after traveling abroad and (2) she could not request a waiver of the inadmissibility provision because the information failed to specify that the quantity of marijuana allegedly possessed was less than thirty grams. Because of plea counsel's alleged ineffective assistance, applicant contends that she involuntarily pleaded guilty.

### A. *Padilla v. Kentucky*

A defendant has a Sixth Amendment right to effective assistance of counsel at a guilty-plea proceeding. *Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex.Crim. App.2009). This right, however, does not extend to the "collateral consequences" of the criminal prosecution, which are consequences that are not "definite, practical consequence[s] of a defendant's guilty plea." *Morrow*, 952 S.W.2d at 536. Although a defendant must be advised of the direct consequences of her guilty plea, "her ignorance of a collateral consequence does not render the plea involuntary." *Id.* (citing *United States v. Long*, 852 F.2d 975, 979–80 (7th Cir.1988)).

Historically, courts have considered deportation to be a "collateral consequence" of a guilty plea; however, in *Padilla*, the Supreme Court recognized that deportation is "uniquely difficult to classify as either a direct or collateral consequence," given its "close connection" to criminal proceedings, and it concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Padilla*, 130 S.Ct. at 1482. Padilla, a legal permanent resident who had lived in the United States for more than forty years, was arrested for the transportation of marijuana, an offense for which deportation is "virtually mandatory." *Id.* at 1477–78. Padilla pleaded guilty to the offense and subsequently faced removal proceedings. *Id.* at 1477. Padilla contended that his plea counsel "not only failed to advise him of [the deportation] consequence prior to entering his plea, but also told him that he 'did not have to worry about immigration status since he had been in the country so long.'" *Id.* at 1478. Padilla relied on this advice when he decided to plead guilty, and he contended that had he not received this incorrect advice he would have insisted on going to trial. *Id.*

The *Padilla* Court, in applying the *Strickland* framework for ineffective assistance claims, noted that immigration law is complex and that there are "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Id.* at 1483. In situations in which the applicable immigration law is "not succinct and straightforward," defense counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* When, however, the "deportation consequence is truly clear," defense counsel owes an "equally clear" duty to give correct advice. *Id.* The Court refused to hold that defense counsel must only avoid providing "affirmative misadvice" to a noncitizen client, and it instead determined that "there is no relevant difference between an act of commission and an act of omission in this context." *Id.* at 1484. Silence regarding the negative immigration consequences of a guilty plea, therefore, also constitutes constitutionally deficient representation under *Strickland*. *Id.* The Court also noted that professional norms already generally impose an obligation on defense counsel to provide advice regarding deportation consequences of guilty pleas. *Id.* at 1485. The Court ultimately held that "counsel must inform her client

whether his plea carries a risk of deportation." *Id.* at 1486. Although the Court held that Padilla satisfied the first prong of *Strickland,* constitutionally deficient performance, it remanded for a determination of prejudice. *Id.* at 1486–87.

### B. Retroactive Effect of Padilla

■ Because applicant's conviction was final at the time the Supreme Court decided *Padilla,* we must first determine whether *Padilla* applies retroactively to applicant's case on collateral review. The State contends that *Padilla* announced a "new constitutional rule of criminal procedure" that should not be applied retroactively to cases on collateral review. *See Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). Applicant contends that *Padilla* did not announce a new rule of criminal procedure but, instead, merely clarified the class of individuals to whom *Strickland* applies and therefore should be applied retroactively.[6]

In *Teague,* the Supreme Court held that, with two exceptions, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310, 109 S.Ct. at 1075; *see also Whorton v. Bockting,* 549 U.S. 406, 416, 127 S.Ct. 1173, 1180, 167 L.Ed.2d 1 (2007) ("Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule

is generally applicable only to cases that are still on direct review."). The Court "has consistently stated that '[a] holding constitutes a 'new rule' within the meaning of *Teague* if it 'breaks new ground,' 'imposes a new obligation on the states or the Federal Government,' or was not '*dictated* by precedent existing at the time the defendant's conviction became final.' " *Marroquin v. United States,* No. M–10–156, 2011 WL 488985, at *2 (S.D.Tex. Feb. 4, 2011) (slip op.) (quoting *Graham v. Collins,* 506 U.S. 461, 467, 113 S.Ct. 892, 897, 122 L.Ed.2d 260 (1993) (emphasis in original)). If, however, the Court "applies a well-established rule of law in a new way based on the specific facts of a particular case, it does not generally establish a new rule." *United States v. Hubenig,* No. 6:03–mj–040, 2010 WL 2650625, at *5 (E.D.Cal. July 1, 2010) (slip op.) (citing *Stringer v. Black,* 503 U.S. 222, 228–29, 112 S.Ct. 1130, 1135–36, 117 L.Ed.2d 367 (1992)); *see also Wright v. West,* 505 U.S. 277, 308, 112 S.Ct. 2482, 2499, 120 L.Ed.2d 225 (1992) (Kennedy, J., concurring) ("If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule.").

In *Hubenig,* the Eastern District of California observed that the issue in *Padilla* was whether plea counsel's performance

---

**6.** State and federal courts are divided on this issue. *Compare United States v. Gilbert,* No. 2:03–cr–00349–WJM–1, 2010 WL 4134286, at *3 (D.N.J. Oct. 19, 2010) (slip op.) (holding *Padilla* not retroactive for cases on collateral review), *and United States v. Shafeek,* No. 05–81129, 2010 WL 3789747, at *3 (E.D.Mich. Sept. 22, 2010) (slip. op.) (holding same), *with United States v. Hubenig,* No. 6:03–mj–040, 2010 WL 2650625, at *5–8 (E.D.Cal. July 1, 2010) (slip op.) (holding *Padilla* did not establish new constitutional rule and, therefore, should be applied retroactively), *and United*

*States v. Chaidez,* 730 F.Supp.2d 896, 898–904 (N.D.Ill.2010) (holding same). The Court of Criminal Appeals has not yet addressed this issue; however, it has ordered that an application for a writ of habeas corpus be filed and set for submission to determine, among other issues, whether *"Padilla* is an application of the established rule in *Strickland v. Washington "* and whether *"Padilla* announced a new rule that is retroactive on collateral review." *See Ex parte Moussazadeh,* No. AP–76439, 2010 WL 4345740, at *1 (Tex.Crim.App. Nov. 3, 2010) (order).

satisfied the first prong of the familiar *Strickland* standard for determining ineffective assistance, and the court noted that specific applications of *Strickland,* which involve "case-by-case examination[s] of the evidence," generally do not "establish a new rule for purposes of *Teague.*" 2010 WL 2650625, at *5. The *Hubenig* court concluded that *Padilla's* application of *Strickland* did not "produce a novel result and, therefore, did not announce a new rule under *Teague.*" *Id.* at *6. The court noted that in *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court stated that "competent defense counsel, following the advice of numerous practice guides, would have advised [her client]" regarding whether a conviction would affect removability from the United States. *Id.* (quoting *St. Cyr,* 533 U.S. at 323 n. 50, 121 S.Ct. at 2291); *see also Padilla,* 130 S.Ct. at 1482 ("The first prong [of *Strickland* ]—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065). The court concluded that the idea that reasonably prudent counsel would have advised his client regarding the immigration consequences of a guilty plea is "not a novel concept." *Id.*

The Eastern District of California further noted that the fact that *Padilla* overruled Ninth Circuit precedent was "not dispositive of whether [*Padilla* ] established a new rule for *Teague* purposes" because the determination of whether a new rule was created is "objective" and the "mere existence of conflicting authority does not necessarily mean a rule is new." *Hubenig,* 2010 WL 2650625, at *7 (quoting *Williams v. Taylor,* 529 U.S. 362, 410, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000)); *see also Tanner v. McDaniel,* 493 F.3d

1135, 1143–44 (9th Cir.2007) ("Each time that a court delineates what 'reasonably effective assistance' requires of defense attorneys with respect to a particular aspect of client representation, ... it can hardly be thought to have created a new principle of constitutional law."). Finally, the *Hubenig* court considered the Supreme Court's statement in *Padilla* that it had "given serious consideration" to the argument that its decision would open the "floodgates" to litigation challenging old guilty pleas and stated that the Court "minimized" this concern by pointing out that a defendant would have to meet both prongs of *Strickland* before the plea could be set aside. *Hubenig,* 2010 WL 2650625, at *7. The *Hubenig* court reasoned that this discussion would have been unnecessary if the Supreme Court had intended for *Padilla* to only apply prospectively. *Id.* The Eastern District of California ultimately concluded that *Padilla* did not establish a new rule under *Teague,* and, thus, it applied *Padilla* retroactively. *Id.* at *8.

In *Marroquin,* the Southern District of Texas explicitly joined with other courts, including the Eastern District of California, and concluded that "*Padilla* does not announce a new rule, that [*Padilla* ] is an extension of the rule in *Strickland v. Washington*—requiring effective assistance of counsel—and that [*Padilla's* ] holding should apply retroactively." 2011 WL 488985, at *2. The Southern District reasoned that the Supreme Court did not "break new ground" in *Padilla;* rather, it merely "pointed out the error [the direct-versus-collateral consequences distinction] in the lower courts that prevented them from considering ineffective assistance of counsel claims under *Strickland.*" *Id.* at *4. The *Marroquin* court noted that in *Padilla,* as in most *Strickland* cases, the Supreme Court "merely cited to profes-

sional standards and expectations and identified competent counsel's duty in accordance thereof." *Id.* at *5; *see also Padilla*, 130 S.Ct. at 1482 ("The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation."). The court acknowledged that *Padilla* overruled numerous lower court decisions, but it discounted the relevance of this fact by noting that *Padilla* "abrogated the lower courts' decisions because of their 'ill-suited' distinction between direct and collateral consequences," and it reasoned that, had the lower courts not "dwelled" on this distinction, they necessarily would have applied *Strickland* and considered the same professional standards that the Supreme Court considered in *Padilla*. *Marroquin*, 2011 WL 488985, at *6. The court held that, "[i]n *Padilla*, the Supreme Court has not announced a new law, it has applied existing law to a new set of facts; therefore, this Court concludes *Padilla* applies retroactively." *Id.* at *7.

We agree with the analysis of the courts in *Hubenig* and *Marroquin* and hold that the Supreme Court's decision in *Padilla* should be applied retroactively to cases on collateral review.

### C. Deficient Performance

Here, it is undisputed that applicant's plea counsel informed her of the general immigration consequences to pleading guilty, that applicant signed a document acknowledging that a guilty plea "may result in [her] deportation, exclusion from admission to this country, or denial of naturalization under federal law," and that the trial court provided this same admonishment pursuant to Code of Criminal Procedure article 26.13(a) before accepting applicant's guilty plea. It is also undisputed that applicant's plea counsel did not specifically inform her that a guilty plea rendered her presumptively inadmissible to the United States upon her return from traveling abroad or that she could not obtain a waiver from this inadmissibility requirement because the information did not specify that the quantity of marijuana allegedly possessed was less than thirty grams. Applicant contends that these failures constitute ineffective assistance and render her plea involuntary under *Strickland* and *Padilla*.

 An applicant seeking habeas corpus relief based upon ineffective assistance of counsel must demonstrate, by a preponderance of the evidence, (1) that her counsel's representation "fell below an objective standard of reasonableness" and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Padilla*, 130 S.Ct. at 1482 (quoting *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068); *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim. App.2005). We presume that counsel's conduct falls within the wide range of reasonable professional assistance, and we will find counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex.Crim.App.2005) (citing *Bone v. State*, 77 S.W.3d 828, 833 n. 13 (Tex.Crim.App. 2002)). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

Section 1182(a)(2)(A)(i)(II) of Title 8 of the United States Code provides that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a violation of . . . any law or regulation of a state . . . relating to a controlled substance is inadmissible." 8 U.S.C.S.

§ 1182(a)(2)(A)(i)(II) (2008). In certain circumstances, the Attorney General may, in his discretion, waive the application of this inadmissibility requirement "insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana." 8 U.S.C.S. § 1182(h) (2008). Upon pleading guilty to possession of marijuana, therefore, applicant was presumptively inadmissible if she left and attempted to return to the United States.[7]

■■■■ At the habeas hearing, applicant testified that she informed her plea counsel that she had an out-of-country trip planned and that she asked him about how that trip affected her ability to seek probation. Counsel informed her that she could not travel outside of the country while on probation and told her that her other option was to plead guilty and receive a suspension of her driver's license. The parties stipulated that plea counsel would testify that he informed applicant of the "general immigration consequences" of a guilty plea—such as that applicant *may* be subject to deportation, inadmissibility, or denial of naturalization upon pleading guilty—but did not inform her that under the immigration statutes, upon her return to the United States from Germany, her inadmissibility and subsequent removal was presumptively mandatory, especially because she did not qualify for the "simple possession" waiver due to the information's failure to specify that the quantity of marijuana allegedly possessed was less than thirty grams.

*Padilla* recognizes that immigration law is complex and is a legal specialty with numerous nuances and intricacies. The Supreme Court therefore held that "[w]hen the law is not succinct and straightforward ... a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 130 S.Ct. at 1483. The Court also held, however, that "when the deportation consequence is truly clear," counsel's "duty to give correct advice is equally clear." *Id.* In *Padilla*, "[t]he consequences of Padilla's plea could easily be determined from reading the removal statute [and] his deportation was presumptively mandatory...." *Id.* "A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty." *United ed States v. Bonilla*, 637 F.3d 980, 984 (9th Cir.2011) (citing *Padilla*, 130 S.Ct. at 1483) (emphasis in original).

7. Section 1229b(a) provides that the Attorney General *may* cancel the removal of an inadmissible alien if the alien (1) has been an alien lawfully admitted for permanent residence for not less than five years; (2) has resided in the United States continuously for seven years after having been admitted in any status; and (3) has not been convicted of any aggravated felony. 8 U.S.C.S. § 1229b(a) (2008). "Aggravated felony" includes "illicit trafficking in a controlled substance (as defined in section 802 of title 21), including a drug trafficking crime (as defined in section 924(c) of title 18)." 8 U.S.C.S. § 1101(a)(43)(B) (2008). Simple possession of marijuana is not considered an aggravated felony. *See Lopez v. Gonzales*, 549 U.S. 47, 53, 127 S.Ct. 625, 629, 166 L.Ed.2d 462 (2006) ("Mere possession is not, however, a felony under the federal [Controlled Substances Act]...."); *Arce–Vences v. Mukasey*, 512 F.3d 167, 171 (5th Cir.2007) ("Because Arce's conviction for simple possession of marijuana is not a drug trafficking crime and does not involve commercial dealing, it is not an aggravated felony under 8 U.S.C. § 1101(a)(43)(B)."). The habeas record indicates that applicant entered the United States as a lawful permanent resident in 1995, fourteen years before the offense at issue. She has not been convicted of an aggravated felony. Applicant therefore appears to qualify for discretionary cancellation of removal under section 1229b(a).

Applicant's inadmissibility upon her return to the United States was presumptively mandatory, and the immigration consequences of a guilty plea in this scenario were clear from reading the inadmissibility and removal statutes. Applicant's plea counsel knew that she had an out-of-country trip planned, and she was entitled to know that, if she still chose to leave the country after pleading guilty, her inadmissibility and subsequent removal was not merely a "possibility" but was a "virtual certainty" and "presumptively mandatory" under the immigration statutes.

We therefore conclude that because the inadmissibility consequence is truly clear in this case plea counsel had a duty to inform applicant of the specific consequences of her guilty plea. Because counsel, who knew that applicant had an out-of-country trip planned, only informed her of the general "possible" immigration consequences, and did not inform her that her inadmissibility and subsequent removal was "virtually certain" and "presumptively mandatory," we hold that counsel's performance was deficient under the first prong of *Strickland.*

### D. Prejudice

 To establish prejudice in the context of an involuntary guilty plea resulting from the ineffective assistance of counsel, the applicant must demonstrate that there is a reasonable probability that, but for her plea counsel's deficient representation, she would not have pleaded guilty, but would have instead insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Morrow,* 952 S.W.2d at 536. The Court of Criminal Appeals has stated that, to demonstrate prejudice in this situation, the defendant must show a reasonable probability that, absent counsel's errors, "a particular proceeding would have occurred," but she need not show that she

would have received a "more favorable disposition" had she gone to trial. *Johnson v. State,* 169 S.W.3d 223, 231 (Tex.Crim. App.2005); *see also Ex parte Crow,* 180 S.W.3d 135, 138 (Tex.Crim.App.2005). Deprivation of a trial is a structural defect, and the "narrowed prejudice inquiry" in the involuntary guilty plea context "is designed to ensure that the defendant would actually have availed himself of the proceeding in question, so that he really is in the same position as someone whose rights were denied by the trial court." *Johnson,* 169 S.W.3d at 231–32. Thus, counsel's allegedly deficient performance "must actually cause the forfeiture [of the proceeding in question]." *Id.* at 232. If the defendant cannot demonstrate that, but for the deficient performance, she would have availed herself of the proceeding, "counsel's deficient performance has not deprived [her] of anything, and [she] is not entitled to relief." *Id.* (quoting *Roe v. Flores–Ortega,* 528 U.S. 470, 484, 120 S.Ct. 1029, 1038, 145 L.Ed.2d 985 (2000)); *Crow,* 180 S.W.3d at 138. In determining whether the defendant met her burden to establish prejudice, "we are to consider the circumstances surrounding her guilty plea and the gravity of the advice that [the defendant] did not receive as it pertained to [the defendant's] plea determination." *Jackson v. State,* 139 S.W.3d 7, 20 (Tex.App.-Fort Worth 2004, pet. ref'd).

Here, at the habeas hearing, applicant testified regarding what actions she would have taken had her plea counsel informed her of the specific consequences of her guilty plea. Applicant had the following exchange with her habeas counsel:

> Counsel: Had you known what you know now, at the time, that you were going to be subject to being [in]admissible and to going to this immigration proceeding, would you have accepted the plea as you did?

Applicant: No, I would have not.

Counsel: If you had known that not having a determination of the amount of possession [in the information,] you would have not been able to receive a waiver from the immigration courts, would you have decided maybe to go to trial?

Applicant: I would have thought about it. I would have probably done so.

Shortly thereafter, on cross-examination, applicant had a similar exchange about her options with the prosecutor:

State: You testified earlier that you would have possibly thought about a jury trial had you known about other consequences; is that correct?

Applicant: That is absolutely correct. I would have certainly weighed my options differently had I known what would result by taking the trip outside of the country.

On appeal, applicant argues that if she had known of the specific immigration consequences of her guilty plea, she would have gone to trial or, at the least, attempted to negotiate a different plea that would allow her to avoid the negative immigration consequences.

■■■ To establish prejudice in the involuntary guilty plea context, the defendant must show, by a preponderance of the evidence that, but for her counsel's errors, she would have "insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370; *Morrow*, 952 S.W.2d at 536. Here, applicant testified at the habeas hearing that, had she known that she would be subject to inadmissibility and removal proceedings if she pleaded guilty, she would not have accepted the plea "as [she] did" and she "would have probably" gone to trial. She further stated that, had her plea counsel informed her of what would happen if she traveled outside of the country after pleading guilty, she "would have certainly weighed [her] options differently." We conclude that based on her testimony at the habeas hearing, applicant met her burden of demonstrating that, but for her plea counsel's deficient and incomplete advice regarding the immigration consequences of a guilty plea, an issue of vital importance to applicant, she would not have pleaded guilty. *See Ex parte Moody*, 991 S.W.2d 856, 858 (Tex.Crim.App.1999) ("Applicant alleges that he would not have accepted the plea bargain had he known he would not serve his sentences concurrently.... Applicant has met his burden of showing a reasonable probability that, but for counsel's erroneous advice, he would not have pled guilty. The nature of the erroneous information in this case is of such importance, and so critical to his decision, as to cast doubt on the validity of the plea."); *see also Padilla*, 130 S.Ct. at 1480 ("These changes [to immigration laws] confirm our view that, as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.").

■■■ The State further contends that applicant cannot demonstrate prejudice because the parties stipulated that the trial court admonished applicant at the original plea hearing that there could be negative immigration consequences to her guilty plea pursuant to Code of Criminal Procedure article 26.13(a). *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(4) (Vernon Supp. 2010) (requiring trial court, before accepting guilty plea, to admonish defendant that plea "may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law"). We note that several courts, post-*Padilla*, have determined that defense counsel's allegedly deficient conduct in failing to inform the defendant of immigration

consequences did not prejudice the defendant when the trial court admonished the defendant that pleading guilty might subject the defendant to removal, inadmissibility, or denial of naturalization. *See Amreya v. United States*, Nos. 4:10–CV–503–A, 4:08–CR–033–A, 2010 WL 4629996,, at *5 (N.D.Tex. Nov. 8, 2010) (slip op.); *United States v. Bhindar*, No. 07 CR 711–04(LAP), 2010 WL 2633858, at *5–6 (S.D.N.Y. June 30, 2010) (slip op.); *United States v. Obonaga*, No. 10–CV–2951 (JS), 2010 WL 2710413, at *1–2 (E.D.N.Y. June 30, 2010) (slip op.); *see also Ohio v. Bains*, No. 94330, 2010 WL 4286167, at *3 (Ohio Ct.App. Oct. 21, 2010) (slip op.) (holding *Padilla* not analogous because Kentucky trial court did not advise Padilla of possible immigration consequences); *Flores v. Florida*, 57 So.3d 218, 219–20 (Fla.Dist.Ct.App.2010) (per curiam) (holding same).

Here, the trial court properly admonished applicant pursuant to article 26.13(a). This admonishment, however, only requires the court to inform a defendant that the guilty plea "may" result in deportation, inadmissibility, or the denial of naturalization. This admonishment is the same as the warning that appears on the plea paperwork that defendants in Harris County are required to sign before pleading guilty. This admonishment is also the same as the advice plea counsel gave to applicant: information regarding the general immigration consequences of a guilty plea. But here, plea counsel rendered ineffective assistance by not specifically informing applicant that, under the immigration statutes, inadmissibility and subsequent removal was "presumptively mandatory" and "virtually certain" upon her return to the United States.

We do not hold that trial courts are under an obligation to inform defendants of the specific immigration consequences to their guilty pleas. Rather, we hold that, under these facts, the trial court's statutory admonishment prior to accepting applicant's guilty plea does not cure the prejudice arising from plea counsel's failure to inform applicant that, upon pleading guilty, she would be presumptively inadmissible.

We hold that applicant established that her plea counsel's representation constituted deficient performance under *Strickland* and *Padilla* and that, but for counsel's deficient advice, she would not have pleaded guilty. We further hold that due to plea counsel's ineffective assistance, applicant involuntarily pleaded guilty.

We sustain applicant's sole issue.

### Conclusion

Habeas corpus relief is granted. We set aside the judgment in cause number 1594654 in the County Criminal Court at Law No. 11 of Harris County and remand applicant to the Harris County Sheriff to answer the charges against her.