COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS







EX PARTE:

JOEL DE LOS REYES,

                           


 

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-10-00239-CR

Appeal from the

 County Court at Law No. 6

of El Paso County, Texas 

(TC# 20040C04713) 






O P I N I O N

            Joel De Los Reyes appeals the trial court’s denial of his application for writ of habeas
corpus. In a single issue, Appellant contends he is entitled to relief by writ of habeas corpus, and
the trial court erred by denying his application, on the basis that he suffered ineffective assistance
of counsel during his original criminal prosecution. By cross-appeal, the State contends that the
trial court lacks subject-matter jurisdiction over the case, as Appellant is currently in federal
custody. We reverse.
            Appellant has been a permanent resident in the United States since 1993. In 1997, he
pled guilty to misdemeanor theft. In 2004, he pled guilty to another misdemeanor theft and was
sentenced to one day of confinement in the El Paso County Jail and ordered to pay a monetary
fine.
            Appellant was taken into custody by the Department of Immigration and Customs
Enforcement in February of 2010. While in custody at a United States Immigration and
Detention Facility, Appellant filed an application for writ of habeas corpus seeking a new trial for
the 2004 theft offense on the basis that his guilty plea was involuntary because his attorney failed
to inform him that his plea would lead to deportation.


 In support of his application, Appellant
submitted two affidavits and a “Memorandum of Law.” In the first affidavit, Appellant stated
that he pled guilty to the 2004 misdemeanor on the advice of his attorney and that his attorney
did not advise him that the plea would lead to deportation. In the second affidavit, Appellant’s
attorney testified that he did, in fact, advise Appellant to plead guilty to the offense, and that he
did so without knowledge of Appellant’s prior theft conviction. The affidavit includes counsel’s
admission that he did not properly investigate and review Appellant’s history, and that had he
done a more thorough review he would not have advised Appellant to plead guilty. Counsel also
stated that he did not properly advise Appellant of the consequences of his plea. He concluded
that Appellant is facing deportation as a “direct result” of his failure to advise Appellant of the
potential impact on his immigration status.
            Although not cited directly in his memorandum of law, Appellant also submitted excerpts
from the United States Supreme Court’s recent decision in Padilla v. Kentucky, -- U.S.--, 130
S.Ct. 1473, 176 L.Ed.2d 284 (2010). In Padilla, the Court concluded that counsel engaged in
deficient performance under the Strickland v. Washington standard by failing to advise his client
that a guilty plea made him subject to deportation. Padilla, --U.S.--, 130 S.Ct. at 1483, citing
Strickland v. Washington, 466 U.S.668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 647 (1984).
            In its answer, the State argued Appellant was not entitled to relief by writ of habeas
corpus, primarily on the basis that Appellant could not meet his burden to establish ineffective
assistance of counsel under Strickland, and that Appellant could not rely on the ruling in Padilla
because the case was decided long after the allegedly deficient performance occurred. The State
also argued that Appellant’s application should be denied under the doctrine of laches, due to
Appellant’s unexplained six-year delay in applying for habeas corpus relief.
            The trial court heard evidence and argument on the application on July 8, 2010. 
Appellant’s trial counsel was the only witness to testify during the hearing. He reiterated his
affidavit testimony and admitted that he did not discuss the possible immigration consequences
with Appellant prior to Appellant’s guilty plea. He testified, “I did not advise him of any type of
immigration consequences or deportation at all.” Counsel explained that when he was notified
that Appellant was taken into federal custody, he researched the issue further and discovered that
although the 2004 misdemeanor theft offense was not sufficient by itself to lead to deportation,
the fact that it was actually Appellant’s second theft conviction provided grounds for the federal
government to remove Appellant from the country. Counsel also testified that Appellant would
not have pled guilty if he had known this.
            At the close of the hearing, the trial court denied the State’s motion to dismiss and denied
Appellant’s application. During its ruling, the trial court noted that the written plea agreement
Appellant signed in 2004 included an admonishment regarding the potential effect on
Appellant’s immigration status.


 While recognizing the Supreme Court’s ruling in Padilla, as
well as counsel’s testimony, the trial court concluded that the written admonishment was
sufficient to give Appellant notice of the consequences of his plea, despite any failure by defense
counsel.
            On appeal, Appellant raises a single issue in which he contends the trial court’s ruling
was erroneous under the United States Supreme Court’s decision in Padilla v. Kentucky. By
cross-appeal, the State also raises a single issue, arguing that the case should have been dismissed
for lack of subject-matter jurisdiction. Because of its potential impact on this Court’s
jurisdiction, we will address the State’s issue first.
            In its cross-appeal, the State reasserts its argument that the trial court lacked jurisdiction
over Appellant’s application pursuant to Article 11.63 of the Texas Code of Criminal Procedure. 
See Tex.Code Crim.Proc.Ann. art. 11.63 (West 2005); Ex parte Nguyen, 31 S.W.3d 815
(Tex.App.--Dallas 2000, orig. proceeding). As a question of law, subject-matter jurisdiction is
subject to de novo review. See Ex parte Peterson, 117 S.W.3d 804, 819 (Tex.Crim.App. 2003),
overruled on other grounds, Ex parte Lewis, 219 S.W.3d 335, 371 (Tex.Crim.App. 2007). The
statute and case law state that the trial court lacks the authority to issue a writ of habeas corpus to
compel the release of an individual from federal custody. In re State, 304 S.W.3d 581, 584
(Tex.App.--El Paso 2010, orig. proceeding); Nguyen, 31 S.W.3d at 817. Based on the statute and
case law, the State argues that since Appellant is being held under the authority of the federal
government, the matter is under federal jurisdiction, and it is up to the federal courts to allow the
release of an applicant in federal custody. The State concludes that a state trial court has no
subject-matter jurisdiction to grant relief because Article 11.63 limits the trial court’s authority
on the application.
            This Court considered this issue on review by petition for writ of mandamus in In re
State. In our discussion, we noted that the state court did not have authority to compel the
federal government to produce the applicant during the habeas proceedings. In re State, 304
S.W.3d at 584. We denied the State’s petition, however, on the basis that the state court retained
jurisdiction to consider, and rule on, the applicant’s request for relief regarding his state
conviction. Id. at 584-85.
            Parallel to the facts in In re State, although Mr. De Los Reyes is in federal custody, the
relief sought in his application for writ of habeas corpus was limited to reversal of his state court
conviction and a new trial. The trial court has jurisdiction to consider such an application, and to
grant the requested relief if appropriate. See Tex.Code Crim.Proc.Ann. art. 11.10; In re State,
304 S.W.3d at 584. Therefore, the State has not demonstrated that the trial court lacked
jurisdiction to consider the writ application, and we deny the State’s request to dismiss the
application for lack of jurisdiction. The State’s cross-issue is overruled.
            An applicant seeking relief by writ of habeas corpus must prove his claim by a
preponderance of the evidence. Ex parte Morrow, 952 S.W.2d 530, 534 (Tex.Crim.App. 1997). 
When reviewing a trial court’s ruling on an application for writ of habeas corpus, we view the
evidence presented in the light most favorable to the ruling, and we must uphold that ruling absent
an abuse of discretion. Ex parte Peterson, 117 S.W.3d at 819. The trial court’s fact findings in a
habeas proceeding will be afforded almost total deference, particularly when those findings are
based on evaluations of credibility and demeanor. Ex parte White, 160 S.W.3d 46, 50
(Tex.Crim.App. 2004). To the extent the ultimate resolution of the application turns on an
application of law, we review the determination de novo. Ex parte Peterson, 117 S.W.3d at 819.
            In Appellant’s sole issue on appeal, he contends the trial court erred by denying the
application based on the United States Supreme Court’s decision in Padilla. Before we address
Appellant’s argument directly, however, we must address the State’s contention that Padilla is not
applicable because the decision was issued approximately six years after Appellant pled guilty to
the misdemeanor.
            Generally, new rules affecting federal constitutional standards of criminal procedure are
only applied in future trials, cases pending on direct review, and federal habeas corpus
proceedings. Ex parte Lave, 257 S.W.3d 235, 236 (Tex.Crim.App. 2008), citing Teague v. Lane,
489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). As the Court went on to
explain, the “Teague rule” was crafted with an eye toward the goals of federal habeas proceedings,
“not to limit a state court’s authority to grant relief for violations of new rules of constitutional
law when reviewing its own State’s convictions.” Danforth v. Minnesota, 552 U.S. 264, 280-81,
128 S.Ct. 1029, 1041, 169 L.Ed2d 859 (2008). The Teague decision itself neither requires nor
prohibits state courts from retroactively applying new rules in the area of constitutional criminal
procedure. Ex parte Lave, 257 S.W.3d at 236-37, citing Danforth, 552 U.S. at 265-66, 128 S.Ct.
1032-33. However, the Texas Court of Criminal Appeals has adopted the “Teague rule” as the
state standard for determining whether a new rule of constitutional criminal procedure will apply
retroactively in Texas habeas proceedings. See Ex parte Lave, 257 S.W.3d at 237, citing Ex parte
Keith, 202 S.W.3d 767, 769 (Tex.Crim.App. 2006)(analyzing the retroactivity of Crawford v.
Washington under the Teague rule).
            The threshold inquiry under Teague is whether the rule that the habeas applicant seeks to
apply retroactively is a “new rule.” See Graham v. Collins, 506 U.S. 461, 467, 113 S.Ct. 892,
897, 122 L.Ed.2d 260 (1993). In terms of Teague, “old rules” are applicable on both direct and
collateral review, while the application of “new rules” is limited to cases on direct review, unless
the “new rule” falls within one of the Teague exceptions. See Whorton v. Bockting, 549 U.S. 406,
416, 127 S.Ct. 1173, 1180, 167 L.Ed.2d 1 (2007)(noting that as a “new rule” in terms of Teague,
the Court’s holding in Crawford v. Washington could only be applied retroactively for relief by
federal writ of habeas corpus if it met one of the Teague exceptions). A “new rule” falls within
the Teague exceptions if: (1) the new rule places certain kinds of primary, private individual
conduct beyond the power of the criminal law-making authority to proscribe; or, (2) the new rule
implicates the fundamental fairness of the trial. Danforth, 552 U.S. at 274-75, 128 S.Ct at 1038.
            A holding is a “new rule” within the meaning of Teague if it breaks new ground, imposes
a new obligation on the states or the federal government, or was not dictated by precedent existing
at the time the defendant’s conviction became final. Graham, 506 U.S. at 467, 113 S.Ct. at 897. 
By comparison, a holding is not a “new rule” if it applies an established law in a new way based
on the facts of a particular case. Stringer v. Black, 503 U.S. 222, 228-29, 112 S.Ct. 1130, 1135-36, 117 L.Ed.2d 367 (1992). If the holding does not constitute a “new rule” under this standard,
the “Teague exceptions” do not apply, and the general rule barring retroactive application
governs. See Graham, 506 U.S. at 467, 113 S.Ct. at 897.
            We now turn to the holding in Padilla; is it a “new rule,” subject to the Teague exceptions,
or an “old rule” being applied to new circumstances? Thus far, only one other appellate court in
Texas has addressed this issue. See Ex parte Tanklevskaya, ___ S.W.3d ___, No. 01-10-00627-CR, 2011 WL 2132722 (Tex.App.--Houston [1st Dist.] May 26, 2011, no pet.h.). Faced with
facts nearly identical to the record before us, and after an extensive analysis of the available
federal authority, the First District Court of Appeals concluded that the holding in Padilla was not
a “new rule” in terms of Teague, and concluded that it could be applied retroactively for purposes
of Texas habeas corpus proceedings.


 Id., 2011 WL 2132722, at *5-7. Recognizing the Supreme
Court’s heavy reliance on its decisions regarding ineffective assistance of counsel, particularly
Strickland v. Washington, our sister court ultimately concluded that the holding in Padilla was
merely applying the well-settled rules governing claims of ineffective assistance of counsel to a
new set of facts. Id., 2011 WL 2132722, at *6-7. Accordingly, the Padilla holding was not
subject to the Teague exceptions and was applicable to a state proceeding on habeas corpus. Id.,
2011 WL 2132722, at *7.
            We agree that the rule announced in Padilla was not a “new rule” as defined by Teague,
but an instance where the well-established standard for determining claims of ineffective
assistance of counsel was applied to a specific circumstance; i.e., counsel’s responsibility to
inform a non-citizen of the potential impact a guilty plea may have on his or her immigration
status. See Tanklevskaya, 2011 WL 2132722, at *7. Because Padilla does not impose a “new”
procedural rule, there is no need to address the Teague exceptions, and we agree that the holding
can be applied in post-conviction habeas corpus proceedings. See id., 2011 WL 2132722, at *7.
            We now turn to Appellant’s claim that he was denied his right to effective assistance of
counsel by his attorney’s admitted failure to inform him that a guilty plea would have a negative
impact on his status as a permanent resident in the United States. We review ineffective
assistance of counsel under the standard set forth in Strickland v. Washington. See Perez v. State,
310 S.W.3d 890, 892-93 (Tex.Crim.App. 2010). There are two components to the Strickland
analysis: (1) the defendant must show that counsel’s performance was deficient; and, (2) the
defendant must demonstrate that the deficient performance prejudiced the defense. Id. It is the
defendant’s burden to establish both prongs by a preponderance of the evidence. Salinas v. State,
163 S.W.3d 734, 740 (Tex.Crim.App. 2005). A deficient legal performance is one which, based
upon “prevailing professional norms,” fell below an objective standard of reasonableness. Perez,
310 S.W.3d 893. When measuring counsel’s performance, the court will consider all the
circumstances of the case, and indulge a strong presumption that the representation fell within the
wide range of reasonable professional assistance. Id. If the defendant establishes a deficient
performance under the first prong, he must still demonstrate prejudice. Id. To establish prejudice,
the defendant must show that counsel’s errors were so serious that the defendant was deprived of
his right to a fair, reliable trial. Id. A defendant satisfies his burden under the second Strickland
prong by proving that there is a reasonable probability that but for the unprofessional
representation, the proceedings would have come to a different result. Id.
            In Padilla v. Kentucky, the United States Supreme Court addressed whether defense
counsel’s failure to inform his non-citizen client regarding the potential immigration
consequences of a guilty plea constituted ineffective assistance of counsel under the Strickland
standard. See Padilla, --U.S. at --, 130 S.Ct. at 1484. The Court concluded that in circumstances
where the applicable immigration laws are “succinct and straightforward,” the Strickland standard
requires defense counsel to inform the defendant whether the plea carried with it a risk of
deportation. See id. By the same token, however, the Court recognized that immigration law in
the United States is both complex and fluid, and specified that if the law in a particular
circumstance was “not succinct and straightforward,” defense counsel is only required to advise
the defendant that a guilty plea could have adverse consequences in terms of immigration. See id., 
130 S.Ct. at 1483. From the Court’s discussion it is clear that regardless of the complexity of the
immigration law involved, a complete failure by defense counsel to inform or advise a defendant
regarding the potential effect on his immigration status constitutes a deficient performance under
the first prong of Strickland. See id. Because this is the undisputed circumstance in which
Appellant made his plea, Appellant has met his burden to prove deficient performance without
regard to the complexity of the federal law involved, and has satisfied the first Strickland prong. 
See id. U.S. at , 130 S.Ct. at 1484. We now turn to the issue of prejudice. See Perez, 310
S.W.3d 893.
            As we discussed above, to establish prejudice, the applicant must prove that there is a
“reasonable probability” that, but for counsel’s errors, he would not have pled guilty. Johnson v.
State, 169 S.W.3d 223, 231 (Tex.Crim.App. 2005); see also Hill v. Lockhart, 474 U.S. 52, 59, 106
S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Deprivation of a trial is a structural defect, which
amounts to a serious denial of the entire judicial proceeding itself, and it demands a presumption
of prejudice. Johnson, 169 S.W.3d at 231. The focus of the prejudice inquiry in this subset of
cases is whether the defendant was deprived of a particular proceeding by counsel’s deficient
performance, not whether the outcome of that proceeding would have been favorable to the
defendant. Id. Therefore, the defendant must demonstrate that but for counsel’s performance, he
would have availed himself of the proceeding in question. Id. at 231-32.
            After Appellant entered his plea and was convicted of theft in 2004, his trial attorney
discovered that Appellant would be deported because the 2004 conviction was his second for
theft. Counsel testified that “if the second conviction had not occurred, he would not be
deported.” This testimony comports with federal immigration law, which requires the deportation
of “[a]ny alien who at any time after admission is convicted of two or more crimes involving
moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether
confined therefor and regardless of whether the convictions were in a single trial . . . .” 
8 U.S.C.A. § 1227(a)(2)(A)(ii)(West 2008); see also United States v. Esparza-Ponce, 193 F.3d
1133, 1136 (9th Cir. 1999)(noting that every federal circuit to address the issue “in the context of
the immigration laws has concluded that petty theft is a crime involving moral turpitude for
purposes of those laws”); State v. Jimenez, 987 S.W.2d 886, 887 & n.1 (Tex.Crim.App.
1999)(demonstrating that two theft convictions have made an alien deportable since 1990). Citing
a different subsection of this statute, the Court in Padilla stated that its “terms . . . are succinct,
clear, and explicit in defining the removal consequence for Padilla’s conviction.” Padilla, ___
U.S. at ___, 130 S.Ct. at 1483. Similarly, given the common understanding of the term “moral
turpitude,” counsel could have easily determined the consequences of two theft convictions from
reading the statute. See id., U.S. at , 130 S.Ct. at 1483.
            Appellant’s attorney should have researched the immigration consequences of having two
theft convictions and should have advised Appellant accordingly. Instead, he did not provide any
advice in this regard. The trial court determined in effect that Appellant was not prejudiced by
this deficiency because the 2004 plea papers informed him that the plea “may result in
deportation, exclusion from admission to the U.S.A. or denial of naturalization under federal
law.” However, given the near certainty that Appellant would be deported, the admonishment that
the plea “may” result in deportation was not sufficient to alleviate the prejudice arising from
counsel’s failure to advise Appellant of the plea’s immigration consequences. See Ex parte
Romero, ___ S.W.3d ___, ___, 2011 WL 3328821, at *2-3 (Tex.App.--San Antonio Aug. 3, 2011,
no pet.h.)(reversing order denying habeas relief where counsel reviewed the court’s standard
admonishments, including the “possible” immigration consequences, with the appellant, because
counsel had a duty to inform the appellant of “the specific consequences of his plea . . . where the
law made deportation a virtual certainty”); Tanklevskaya, ___ S.W.3d at ___, 2011 WL 2132722,
at *7, *11 (holding that the trial court’s admonishment that the appellant’s plea “may result in
deportation, exclusion from admission to this country, or denial of naturalization under federal
law” did “not cure the prejudice arising from plea counsel’s failure to inform applicant that, upon
pleading guilty, she would be presumptively inadmissible”); see also Padilla, ___ U.S. at ___,
130 S.Ct. at 1480 (“Under contemporary law, if a noncitizen has committed a removable offense
after . . . 1996 . . . his removal is practically inevitable but for the possible exercise of limited
remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens
convicted of particular classes of offenses.”).
            Appellant’s sole issue is sustained, the trial court’s order is reversed, and habeas corpus
relief is granted.
 
 
August 31, 2011
DAVID WELLINGTON CHEW, Chief Justice
 
Before Chew, C.J., McClure, and Rivera, JJ.
 
(Publish)