

**NUMBER 13-11-00380-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### EX PARTE JOSE GABRIEL GALVAN-HERRERA

**On appeal from the 206th District Court
of Hidalgo County, Texas.**

# CONCURRING MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes
Concurring Memorandum Opinion by Justice Benavides**

I write separately to critique the current state, interpretation, and enforcement of some of our country's immigration laws and note the harmful effects that they have on public policy. What the federal and state governments have accomplished today amounts to nothing short of an injustice for Jose Gabriel Galvan-Herrera, his family, and others in similar situations.

# I. APPLICATION OF *PADILLA*

While the majority did not reach the merits of Herrera's habeas application in its opinion, I find it necessary to address whether *Padilla* extends to Herrera's circumstances, assuming that he met the procedural bar discussed by the majority. *See Padilla v. Kentucky*, 130 S.Ct. 1473, 1480–87 (2010).

The *Padilla* Court made it clear that a lawyer's failure to advise a client of deportation consequences following a plea of guilty on a deportable offense falls "below an objective standard of reasonableness." *See id* at 1482–83. The Supreme Court noted that the "weight of prevailing professional norms" supports the view that "counsel must advise her client regarding the *risk* of deportation" when dealing with non-citizen clients. *Id.* at 1482 (citations omitted) (emphasis added).

As a threshold matter, I would conclude that *Padilla* applies retroactively. Under *Teague*,[1] a new rule should not be applied to cases on collateral review, but rather to cases on direct review. I agree with the reasoning of our two sister courts that *Padilla* is not a "new rule" for purposes of *Teague*, but instead a new application of a well-established rule of law and thus may apply retroactively to cases on collateral review. *See Ex parte Tanklevskaya*, No. 01-10-00627-CR, 2011 WL 2132722, at *4–7 (Tex. App.—Houston [1st Dist.] May 26, 2011, pet. denied); *Ex parte De Los Reyes*, 350 S.W.3d 723, 729 (Tex. App.—El Paso 2011, pet. granted).

In this case, the State argued that Herrera did not meet his burden to prove

---

[1] *See Teague v. Lane*, 489 U.S. 288, 311–16 (1989) (recognizing that new Constitutional rules should not be applied retroactively, unless they fall under two exceptions).

ineffective assistance of counsel because at the time of Herrera's guilty plea, burglary was not a deportable offense. I am not persuaded by this argument. *Padilla* requires lawyers to provide full disclosure to non-citizen criminal clients whether the charged offense is clearly deportable or not. *See id* at 1482–83. Following that reasoning, counsel should advise a non-citizen criminal defendant of the potential risk of deportation whether the threat is imminent or in the future.[2] *See id.* Here, Herrera's counsel failed to discuss the risk of deportation with his client, which I would conclude fell below the standard of reasonableness and satisfies the first prong of *Strickland* because that omission was "outside the range of professionally competent assistance." *See id.* at 1483; *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

While Herrera's burglary charge may not have been a deportable offense in 1987, I believe Herrera's counsel nonetheless should have advised him at the time of his plea that possible deportation consequences may arise in the future. By doing so, he would have provided full and complete representation to his non-citizen client. The *Padilla* Court recognized that immigration law can be complicated, complex, and convoluted. *See* 130 S.Ct. at 1483. In cases where deportation consequences are unclear or uncertain, a lawyer "need do no more than advise a non-citizen client that pending criminal charges may carry the risk of adverse immigration consequences." *Id.* *Padilla* appears to favor affirmative cautiousness and completeness over omissions when giving advice to non-citizen criminal clients. *See id.* In this case, I would

---

[2] While I recognize that the Court of Criminal Appeals has noted that "a bar card does not come with a crystal ball" with regard to ineffective assistance of counsel claims, *see Ex parte Chandler*, 182 S.W.3d 350, 359 (Tex. Crim. App. 2005), I cannot adopt such a creative metaphor in this case, particularly in light of the practical effects of such an unjust deportation scheme.

conclude that Herrera's counsel's non-performance amounted to ineffective assistance.

Finally, under *Strickland*, a defendant must meet the "prejudice" prong in guilty pleas by showing that "there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 58–60 (1985). Here, I would hold that Herrera met the prejudice prong of *Strickland* because in his affidavit attached to his habeas petition, he stated that his trial counsel (1) did not inquire about his immigration status, (2) did not advise him that his plea would affect his immigration status, and (3) had he known what the effect of his plea would be, he would have insisted on going to trial. *See Hill*, 474 U.S. at 60.

## II.    EX-POST FACTO CLAUSE AND RETROACTIVE DEPORTATION

The United States Supreme Court has expressly held that the Ex Post Facto Clause[3] of the United States Constitution has no application to deportation statutes like the one involved in Herrera's case because Congress has been given the exclusive control over our nation's immigration laws and deportation proceedings, which are political policies with due process safeguards rather than punishments. *See Galvan v. Press*, 347 U.S. 522, 744 (1954). However, I join other jurists and call for a re-evaluation of whether the Ex Post Facto Clause of the Constitution applies to retroactive deportation statutes. *See* Nancy Morawetz, *Rethinking Retroactive Deportation Laws and the Due Process Clause*, 73 N.Y.U. L. REV. 97, 103–06 (1998)

---

[3]*See* U.S. CONST. art. I, § 9, cl. 3.

(noting constitutional concern with the effect of ex post facto deportation statutes).[4]   It seems inappropriate that courts can sit idly by as Congress exercises its power to deport individuals for past convictions, rather than address questions such as "how long ago a crime was committed, how minor the crime, how plainly the person has shown rehabilitation, how serious the consequences of deportation, or how tenuous the justification for deportation."   *See id.* at 101.   The preceding questions seem pertinent to Herrera's case, but will nonetheless go unanswered by this Court.

Today, I share the same views and concerns that Justice Douglas pondered in his dissent nearly sixty years ago about a deportation statute that had retroactive effect with respect to a crime committed by a non-citizen fourteen years prior to its enactment. *See Marcello v. Bonds*, 349 U.S. 302, 303–21 (1955).   In his dissent, Justice Douglas argued that nothing in the Constitution exempts non-citizens from ex post facto laws, not even a hypothetical law as simple as calling for the deportation of any non-citizen who ever violated any traffic law.   *Id.*   (Douglas, J. dissenting).

We cannot ignore the human element behind retroactive deportation statutes. Many lawful permanent residents have lived in the United States for decades and have

---

[4] *See Scheidemann v. I.N.S.*, 83 F.3d 1517, 1527 (3d Cir. 1996) (Sarokin, J., concurring) (writing that "[t]he legal fiction that deportation following a criminal conviction is not punishment is difficult to reconcile with reality, especially in the context of this case. Mr. Scheidemann entered this country at age twelve; he has lived here for thirty-six years; he has been married to an American citizen for twenty-four years; he has raised three children all of whom are American citizens; his elderly parents are naturalized citizens; two of his four siblings are naturalized American citizens, and all four of them reside permanently in the United States; he has no ties to Colombia, the country to which he is to be deported; and he has fully served the sentence imposed upon him. If deportation under such circumstances is not punishment, it is difficult to envision what is. I think the deportation of aliens for the commission of crimes is clearly punishment. If Mr. Scheidemann's deportation could be characterized, as it should be, as punishment, I would conclude that the statutory bar to the discretionary waiver is a violation of the Ex Post Facto Clause of the Constitution.").

strong ties to this country through family, business, and worship. Again, Herrera made the point clear in his affidavit that had he known that his immigration status could potentially be affected by his plea, he "would have insisted on going to trial." This sentiment is one that is recognized by the *Padilla* Court and one that many non-citizens share:

> We too have previously recognized that "'[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'"

*Padilla*, 130 S.Ct. at 1483 (quoting *I.N.S. v. St. Cyr,* 533 U.S. 289, 323 (2001)). Because the livelihoods of too many non-citizens—and their families—in this country are at stake, I fail to see any legal, political, or practical justification for Congress's continued power to pass seemingly unfair and unjust retroactive deportation statutes.

For these reasons, I reluctantly concur.


_____
GINA M. BENAVIDES,
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of April, 2012.

6