Kufreabasi Ita ENYONG, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–11–00943–CR, 01–11–00944–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 26, 2012.

Joan Nwuli, Law Office of Joan O. Nwuli & Associates, Humble, TX, for Appellant.

Alan Curry, Chief Prosecutor, Appellate Division, Harris County District Attor-

ney's Office, Mandy Goldman Miller, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, MASSENGALE, and HUDDLE.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Kufreabasi Ita Enyong, challenges the order of the trial court denying him the relief that he requested in his application for writ of habeas corpus. In his sole issue, appellant contends that his trial counsel rendered ineffective assistance in not advising him of the immigration consequences associated with his guilty pleas for the misdemeanor offenses of assault of a family member[1] and violation of a protective order.[2]

We reverse the order of the trial court, render an order granting appellant the relief that he requested in his application for writ of habeas corpus, and remand the case for proceedings consistent with our opinion.

1. Trial court cause number 1612023 A; appellate court cause number 01–11–00943–CR; see TEX. PENAL CODE ANN. § 22.01 (Vernon 2011).

2. Trial court cause number 1618601 A; appellate court cause number 01–11–00944–CR; see id. § 25.07 (Vernon Supp. 2011).

3. At the hearing on appellant's application, the State introduced into evidence the plea documents regarding the assault offense, but not the plea documents regarding the offense of violation of a protective order. However, the parties agree to the essential facts regarding appellant's plea to the offense of violation of a protective order. The parties also agree, and the record reflects, that, on February 22, 2010, the State dismissed two other pending criminal cases against appellant.

## Background

On February 22, 2010, appellant pleaded "guilty/nolo contendere" to the misdemeanor offense of assault of a family member, and, pursuant to his plea agreement with the State, the trial court deferred adjudication of his guilt and placed him on community supervision for nine months. Also, appellant pleaded "guilty" to the offense of violation of a protective order, and, pursuant to his plea agreement with the State, the trial court found appellant guilty and sentenced him to confinement in the Harris County Jail for 100 days.[3] The State subsequently filed a motion to adjudicate appellant's guilt in the assault case, and, on March 3, 2011, the trial court found appellant guilty of the offense and sentenced him to confinement for one year.[4]

On June 22, 2011, appellant was released from the Harris County Jail and remanded to the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). DHS records indicate that he was deemed "removable," and once in DHS custody, appellant was "processed" pursuant to the United States Immigration

We note that records from the United States Department of Homeland Security ("DHS"), which are contained in the record, refer to multiple other criminal cases that were filed against appellant, but ultimately dismissed.

4. Although the record does not contain any documents evidencing the basis on which appellant's guilt was adjudicated, the trial court, at the hearing on appellant's application, stated that it took judicial notice that on March 16, 2010, while appellant was on community supervision, he was arrested for the offense of burglary of a motor vehicle. This offense apparently formed the basis upon which appellant's guilt of the offense of assault was adjudicated. The trial court further noted that the burglary case was subsequently dismissed.

and Nationality Act ("INA").[5] And, on July 6, 2011, an Immigration Judge, stating that appellant had been "convicted of aggravated felony, assault, sentenced to one year," signed an order denying appellant's "request for change in custody."

Appellant then filed his application for writ of habeas corpus,[6] seeking to set aside his "involuntary" pleas in both cases. Citing the United States Supreme Court's recent opinion in *Padilla v. Kentucky*,[7] appellant argued that he had been denied effective assistance of counsel[8] because his trial counsel failed to advise him of "the immigration consequences" that could result from his guilty pleas. Appellant asserted that he had retained his trial counsel in a prior criminal matter that had been initiated by his wife and dismissed in 2008. In 2009, he again retained the same trial counsel to represent him in the instant assault case, also initiated by his wife. Appellant asserted that his wife "fabricated" the assault case after he had contacted Child Protective Services concerning her abandonment of their children. Appellant explained that although he "did not want to plead guilty" in the assault case, the case had been reset several times, his bond had been revoked, and his trial counsel warned him that he "would remain in jail for a long time waiting for trial." His trial counsel then advised him to "plea to deferred adjudication probation as it would not be a conviction but would result in dismissal as soon [he] finish[ed] . . . probation." Appellant further explained that when he inquired about whether his plea would impact his immigration status, his trial counsel advised him that "deferred adjudication probation was not a conviction." Based upon his counsel's advice, appellant pleaded guilty to obtain "deferred adjudication probation." Appellant also asserted that his wife had "fabricated" the allegation that he violated a protective order, to which his trial counsel also advised that he plead guilty.

Appellant argued that his pleas were "not made knowingly and voluntarily" because his trial counsel did not advise him of the immigration consequences of his pleas, did not advise him that "deferred adjudication is a final conviction for immigration purposes or that [he would] be deported if [he] pleaded guilty" to either charge, and "did not discuss the immigration consequences of [his] plea at all with [him]." Appellant asserted that he would not have pleaded guilty to the offenses if his counsel had advised him of the immigration consequences of his pleas. And he noted that, after he had served his time for his convictions, he was "transferred to USDHS/ICE Detention Center where [he] await[s] deportation as a result of the criminal convictions [he] pleaded guilty to." Appellant signed a verification of his statements.

Appellant also attached to his application an affidavit from his trial counsel, who testified that he represented appellant in the assault and protective-order cases and he did "not recall or remember discussing the immigration consequences of his pleas, or convictions for the offenses with him outside explaining the plea papers to him."

---

5. Specifically, DHS records reflect that appellant was deemed "removable" under sections 237(a)(2)(A)(ii) and 237(a)(2)(E)(ii) and processed pursuant to sections 237(a)(2)(A)(II) and 237(a)(2)(E)(ii) of the INA. *See* 8 U.S.C. 1227(a)(2)(A); 8 U.S.C. 1227(a)(2)(E).

6. *See* Tex.Code Crim. Proc. Ann. arts. 11.072, 11.09 (Vernon 2005).

7. *See Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

8. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The trial court conducted a hearing on appellant's application. Neither appellant, who remained detained, or his trial counsel appeared at the hearing. In support of the application, appellant's habeas counsel referred to the affidavit testimony that appellant attached to his application, as well as two additional affidavits that appellant signed. Habeas counsel also referred to the affidavit of appellant's trial counsel. In response, the State asserted that appellant had "been arrested a multitude of times in the United States" and subjected to "the United States Criminal Justice System not once, not twice, but eight or nine times." Although the State acknowledged that many of the criminal cases to which it referred were ultimately dismissed, it requested that the trial court "infer" from the history of appellant's arrests "some understanding" of the situation. The State also asserted that there is "absolutely no evidence" that appellant's trial counsel told appellant that he need not be concerned with the immigration consequences of his pleas. Instead, the State asserted that trial counsel, in his affidavit, specifically stated only that he did not "recall" speaking with appellant and there is no evidence that it was not counsel's "common course or practice" to provide such advice. The State further asserted that the admonishments provided in the plea papers are "sufficient." [9]

The trial court took judicial notice that appellant, on February 22, 2010, pleaded guilty to the offenses of assault, for which he "received a nine-month deferred adjudication," and violation of a protective order. The trial court also took judicial notice that the State had subsequently filed a motion to adjudicate appellant's guilt of the offense of assault and he was sentenced to confinement for one year in the

Harris County Jail. Finally, the trial court took judicial notice that, State's Exhibit 1, which is a copy of the plea admonishment form used for appellant's plea in the assault case, is the same form that the trial court "accepted" "on all plea bargains on February 22, 2010."

State's Exhibit 1, a form entitled "Misdemeanor Plea of Guilty/Nolo Contendere," reflects that on February 22, 2010, appellant entered into a plea bargain agreement with the State in the assault case. In exchange for the deferred adjudication of his guilt and nine months community supervision, appellant pleaded guilty. He acknowledged that he had been charged with the misdemeanor offense of "Assault Family Member" for which he faced a punishment of a fine not to exceed $4,000 and confinement for up to one year in jail. The form also states, "I understand that . . . if I am not a citizen of the United States my plea of guilty/nolo contendere may result in my deportation, exclusion from admission to this country, or denial of naturalization under federal law." Above the signature for appellant's attorney, the form stated, "I have consulted with [appellant] . . ., to whom I have fully explained all of the matters contained in this instrument."

The trial court denied appellant the relief that he requested in his application.

### Standard of Review

In a habeas corpus proceeding, an applicant has the burden to prove his claims by a preponderance of the evidence. *Ex parte Peterson,* 117 S.W.3d 804, 818 (Tex.Crim.App.2003). In reviewing a trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling.

9. It is undisputed that the State did not introduce into evidence plea documents regarding

appellant's conviction for the offense of violation of a protective order.

*Id.* at 819. "We afford almost total deference to a trial court's factual findings in habeas proceedings, especially when those findings are based upon credibility and demeanor." *Ex parte White,* 160 S.W.3d 46, 50 (Tex.Crim.App.2004). We afford the same amount of deference to the trial court's ruling on "application of law to fact questions," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Ex parte Peterson,* 117 S.W.3d at 818. However, if the resolution of those ultimate questions turns on an application of legal standards absent any credibility issue, we review the determination de novo. *Id.*

### Ineffective Assistance

In his sole issue, appellant argues that his trial counsel rendered ineffective assistance because he failed to advise appellant that his plea of guilty to the offense of assault of a family member for deferred adjudication constitutes "a conviction that renders him deportable," his conviction "had a possibility" of being considered "an aggravated felony for immigration purposes" if his "probation [was] revoked and he [was] sentenced up to one year in jail," and his plea of guilty to violation of a protective order renders him deportable.

██ An applicant seeking habeas corpus relief based upon ineffective assistance of counsel must, by a preponderance of the evidence, show (1) his counsel's representation "fell below an objective standard of reasonableness" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [10]

*Padilla v. Kentucky,* —— U.S. ——, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)); *Ex parte Chandler,* 182 S.W.3d 350, 353 (Tex.Crim. App.2005). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that his performance falls within the wide range of reasonable professional assistance or trial strategy. *Robertson v. State,* 187 S.W.3d 475, 482–83 (Tex.Crim.App.2006). A failure to make a showing under either prong defeats an ineffective-assistance claim. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex.Crim.App. 2003). Moreover, allegations of ineffectiveness must be firmly founded in the record. *Bone v. State,* 77 S.W.3d 828, 833 & n. 13 (Tex.Crim.App.2002); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App. 1999).

██ "Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla,* 130 S.Ct. at 1480–81. Courts have "long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Id.* at 1486; *see also Ex parte Reedy,* 282 S.W.3d 492, 500 (Tex.Crim. App.2009) ("There is no doubt that an accused has a Sixth Amendment right to the effective assistance of counsel in guilty plea proceedings."). To provide effective

10. In addressing a claim of ineffective assistance of counsel during plea proceedings, the Texas Court of Criminal Appeals has stated that an applicant "must show that his trial counsel's advice with respect to accepting a plea offer did not fall within the wide range of competence demanded of attorneys in criminal cases, and that, but for his attorney's deficiencies, he would not have accepted the offer but would have insisted on going to trial." *Ex parte Reedy,* 282 S.W.3d 492, 500 (Tex.Crim.App.2009).

assistance during plea proceedings, "counsel has a duty to render his best judgment to his client about what plea to enter, and that judgment should be informed by an adequate and independent investigation of the facts of the case." *Ex parte Reedy,* 282 S.W.3d at 500.

In *Padilla,* the defendant complained that his trial counsel had failed to advise him of the deportation consequences of a guilty plea for a narcotics offense and incorrectly advised him concerning the plea's effect on his immigration status. 130 S.Ct. at 1477–78. The Supreme Court noted that deportation is a particularly severe "penalty" that is "intimately related to the criminal process" and "recent changes" in immigration laws "have made removal nearly an automatic result for a broad class of noncitizen offenders." *Id.* at 1481–82. After finding it "most difficult" to separate the "penalty from the conviction in the deportation context," the Court concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.*

In considering the specifics of Padilla's plea, the Supreme Court acknowledged that immigration law can be "complex," but it noted that the terms of the relevant immigration statute under which Padilla was to be deported were "succinct, clear, and explicit." *Id.* at 1483 (citing 8 U.S.C. § 1227(a)(2)(B)(i) (providing that "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable")). The Court explained that, under the circumstances, when "the deportation conse-

quence is truly clear," counsel's duty to give correct advice regarding the immigration consequences of a guilty plea "is equally clear." *Id.* It also recognized that there would be "numerous situations in which the deportation consequences of a particular plea" would be "unclear or uncertain" and the relevant law would not be "succinct and straightforward." *Id.* The Court noted that, in such situations, counsel would owe a "more limited" duty to "advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* But, even after recognizing a "more limited" duty in certain situations, the Court emphasized that counsel could not discharge his duty by remaining silent or refraining from providing "affirmative misadvice." *Id.* at 1484. It explained that limiting a counsel's duty in such ways would be "fundamentally at odds with the critical obligation of counsel to advise the client of the advantages and disadvantages of a plea agreement." *Id.* The Court stressed that it "is quintessentially the duty" of counsel to provide his client with available advice about an issue like deportation. *Id.* Accordingly, the Supreme Court held that "longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country" demand that counsel "must inform [his] client whether his plea carries a risk of deportation." *Id.* at 1486. In support of its holding, the Court noted that the "weight of prevailing professional norms supports the view that counsel must advise [his] client regarding the risk of deportation." *Padilla,* 130 S.Ct. at 1482. The Court concluded that Padilla had sufficiently alleged that his counsel was constitutionally deficient, and it remanded the case for a determination of prejudice. *Id.* at 1486–87.

In the instant case, the State first argues that the relief requested by appellant should be denied because *Padilla* should not be applied retroactively to appellant's "conviction," which was final at the time *Padilla* issued. But, as the State concedes, this Court has recently considered the retroactive effect of *Padilla*, and we concluded that the decision in *Padilla* "should be applied retroactively to cases on collateral review." *Ex parte Tanklevskaya*, 361 S.W.3d 86, 95 (Tex.App.-Houston [1st Dist.] 2011, pet. filed) (citing *Marroquin v. United States*, No. M–10–156, 2011 WL 488985, at *2 (S.D.Tex. Feb. 4, 2011) (slip op.)). Our Court addressed this issue extensively in *Tanklevskaya*, and we follow its holding applying *Padilla* retroactively.[11] *See id.; see also Ex parte De Los Reyes*, 350 S.W.3d 723, 729 (Tex.App.-El Paso 2011, pet. granted) (agreeing that *Padilla* can be retroactively applied in post-conviction habeas proceedings); *U.S. v. Orocio*, 645 F.3d 630, 641 (3d Cir.2011) (holding *Padilla* retroactive on collateral review); *McNeill v. United States*, No. A–11–CA495 SS, 2012 WL 369471, at *3 (W.D.Tex. Feb. 2, 2012) ("It is difficult to see how the Supreme Court could apply the rule in *Padilla* itself without a belief that the rule applied retroactively."); *but see Chaidez v. United States*, 655 F.3d 684, 694 (7th Cir.2011) (holding that *Padilla* does not apply retroactively to cases on collateral review).

Having concluded that *Padilla* applies to appellant's case, we now turn to consider whether appellant has satisfied the first prong of *Strickland* by demonstrating that his counsel's representation "fell below an objective standard of reasonableness." *Padilla*, 130 S.Ct. at 1482. In arguing that we should deny appellant the relief that he requested in his application, the State notes that appellant's trial counsel testified by affidavit that he advised appellant in accordance with the plea paperwork, which provided a general admonishment that a guilty plea "may" result in "deportation." The State asserts that appellant's deportation, as a result of his guilty plea, was not "presumptively mandatory." In support of this assertion, the State cites "a recent internal memorandum issued by John Morton, Director of [ICE]," which encourages ICE employees to use "prosecutorial discretion" in enforcing immigration laws. The State also argues that because appellant was charged with "multiple crimes" and immigration officials are provided "wide discretion" in enforcing immigration laws, the deportation consequences of appellant's guilty pleas were not "truly clear."

DHS records reflect that after the State released appellant from incarceration, he was deemed removable and "processed" pursuant to sections 237(a)(2)(A) and 237(a)(2)(E) of the INA. 8 U.S.C. § 1227(a)(2)(A); 8 U.S.C. § 1227(a)(2)(E)). "Any alien who [ ](I) is convicted of a crime involving moral turpitude[12] com-

---

**11.** *See also Ex parte Victorio*, No. 05–11–01008–CR, 2012 WL 286803, at *5 (Tex.App.-Dallas Feb. 1, 2012, no pet. h.) (declining to address retroactive application of *Padilla* and instead holding that appellant could not satisfy the second prong of *Strickland* standard); *Ex Parte Tovilla*, No. 14–10–01120–CR, 2012 WL 113049, at *3 (Tex.App.-Houston [14th Dist.] Jan. 12, 2012, no pet. h.) (mem. op.) (declining to consider whether *Padilla* applies retroactively because appellant failed to dem-

onstrate that he was prejudiced by counsel's errors).

**12.** The term "moral turpitude" is not defined in the INA, but the State does not dispute that appellant's convictions would qualify as those involving moral turpitude.

The term "conviction," with respect to an alien, is defined as "a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld,

mitted within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed is deportable." 8 U.S.C. § 1227(a)(2)(A)(i)(I-II). And "[a]ny alien who at any time after entry is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued is deportable." 8 U.S.C. § 1227(a)(2)(E)(ii).

Moreover, there are multiple other provisions of the INA indicating that, upon his guilty pleas, appellant was deportable. For example, "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). And "[a]ny alien who is convicted of an

aggravated felony[ [13]] at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Moreover, "[a]ny alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, ... is deportable." 8 U.S.C. § 1227(a)(2)(E)(i). The term "crime of domestic violence" is defined to include "any crime of violence," as described above, "against a person committed by a current or former spouse of the person." *See id.* Finally, the Attorney General of the United States "may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien (1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a).[14]

Had appellant's trial counsel engaged in a simple review of the plain language of these provisions, which are contained in an easily-identifiable section of the INA appropriately titled "Deportable aliens," it would have been clear to counsel that appellant faced almost certain deportation as a result of his guilty pleas.[15] *See Padilla,*

---

where(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." *See* 8 U.S.C. § 1101(a)(48)(A).

**13.** An "aggravated felony" is defined in the INA to include a "crime of violence ... for which the term of imprisonment [is] at least one year." *See* 8 U.S.C. § 1101(a)(43)(F). "[C]rime of violence" is defined as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property

of another may be used in the course of committing the offense." 18 U.S.C. § 16.

**14.** Appellant cites this provision in his briefing to suggest that, if his offense qualified as an aggravated felony under the INA, he would not have been entitled to seek cancellation of any removal proceedings. However, we note that DHS documents in the record before us state that appellant entered the United States on August 12, 2005, which would raise questions as to his ability to satisfy the other subsections of the cancellation of removal provision.

**15.** Based upon appellant's testimony and the appellant's history of criminal arrests, competent trial counsel would have considered and counseled regarding the almost certain depor-

130 S.Ct. at 1483 (noting that Padilla's counsel "could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal" for the controlled substance conviction to which Padilla pleaded guilty). As in *Padilla*, the terms of the relevant immigration statutes are "succinct, clear, and explicit in defining the removal consequence" for appellant's convictions. *See id.*

■ The Supreme Court's opinion in *Padilla* commands that "when the deportation consequence is truly clear," counsel's "duty to give correct advice is equally clear." *Id.* Here, the evidence demonstrates that, at most, appellant's counsel reviewed the general admonishments contained in appellant's plea papers, which advised appellant that his pleas "may" result in deportation. But, "[a] criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty." *Tanklevskaya*, 361 S.W.3d at 96 (citing *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir.2011)). Thus, the general admonishments regarding the variety of possible immigration

consequences (i.e., deportation, exclusion from admission, or denial of naturalization) contained within appellant's plea papers, and his counsel's testimony that he generally reviewed the plea papers with appellant, are not sufficient to discharge counsel's duty to render effective assistance in regard to the immigration consequences that appellant faced based upon his guilty pleas. *Padilla*, 130 S.Ct. at 1482–84, 1486.

■ We conclude that because the deportation consequences were "truly clear" in this case and the evidence presented to the trial court demonstrated that appellant's trial counsel did not inform him that his subsequent removal was virtually certain and presumptively mandatory, trial counsel's performance was deficient under the first prong of *Strickland*.[16] *See Padilla*, 130 S.Ct. at 1483 (noting that consequences of plea "could easily be determined from reading the removal statute," which indicated that deportation for criminal conviction was "presumptively mandatory"); *Tanklevskaya*, 361 S.W.3d at 99 (holding that counsel who only informed client of general, possible immigration consequences, and did not inform client that inadmissibility and subsequent removal was "virtually certain" and "presumptively mandatory," provided deficient performance under the first prong of *Strickland* ).

tation consequences resulting from any subsequent adjudication of guilt on the assault charge.

**16.** We reject the State's argument that an internal ICE memorandum obviates the duty, as articulated in *Padilla*, of trial counsel to consider the relevant immigration statutes and advise his client of "truly clear" immigration consequences arising from a guilty plea. We also reject the State's argument that we should "infer" that appellant's trial counsel advised appellant regarding the specific immigration consequences as part of his normal and common practice. Although it certainly may be true that appellant's trial counsel has represented a large number of

clients and could not recall specific discussions with appellant, counsel provided no testimony suggesting that his normal practices would have dictated that he provided any specific immigration advice beyond the general review of plea papers. In fact, to the extent that any inference can be drawn from trial counsel's affidavit regarding his normal practices, the affidavit suggests only that his normal practice in regard to the immigration consequences of guilty pleas was simply to review matters discussed in the plea papers, including the general admonitions about possible immigration consequences.

We now consider whether appellant satisfied the second prong of *Strickland* by demonstrating a "reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Padilla*, 130 S.Ct. at 1482. Here, appellant testified that, although he did not wish to plead guilty to the assault offense, his trial counsel advised him, in light of the facts that his case had been reset and his bond had been revoked, to "plea to deferred adjudication probation as it would not be a conviction but would result in dismissal as soon [he] finish[ed] ... probation." Appellant stated that his counsel further cautioned him that, otherwise, he "would remain in jail for a long time waiting for trial." Moreover, appellant testified that when he asked his trial counsel about how his plea would impact his immigration status, his trial counsel advised him that "deferred adjudication probation was not a conviction," and, based upon his counsel's advice, he pleaded guilty to "deferred adjudication probation." Appellant also stated that he pleaded guilty to violating a protective order on his trial counsel's advice and his trial counsel did not inform him of any immigration consequences or that "deferred adjudication" constitutes "a final conviction for immigration purposes." Finally, appellant stated that he would not have pleaded guilty to the offenses if his trial counsel had advised him of the immigration consequences of his pleas.

The type of evidence presented in the instant case is similar to the evidence presented in *Tanklevskaya*, in which we concluded that the applicant had demonstrated prejudice. *Tanklevskaya*, 361 S.W.3d at 92–93. In *Tanklevskaya*, we noted that, at the habeas hearing, the applicant testified that she would not have accepted a plea had she known that she would have subsequently been ruled inadmissible into this country, and she stated that she would

have "probably" gone to trial had she known. *Id.* at 92–93. Based upon the applicant's testimony at the habeas hearing, we concluded that she had met her burden of demonstrating that but for her counsel's deficient and incomplete advice regarding immigration consequences, which was "an issue of vital importance to applicant," she "would not have pleaded guilty." *Id.* at 99.

In *Tanklevskaya*, we rejected the State's argument, which is similar to an argument it presents in this case, that a general admonishment that a guilty plea "could" give rise to "negative immigration consequences" obviated any prejudice from counsel's deficient performance. *Id.* We noted that such general admonishments, whether provided by the trial court or set forth in the plea paperwork, would not be sufficient to cure the prejudice arising from trial counsel's failure to inform his client when negative immigration consequences are "presumptively mandatory" and "virtually certain." *Id.* at 97. Indeed, it would seem illogical to, on the one hand, require effective counsel to provide specific advice regarding "clear" or "virtually certain" immigration consequences, but then, on the other, hold that a defendant is not prejudiced by counsel's failure to provide this constitutionally required advice simply when a trial court, or counsel, provides a boilerplate warning concerning general immigration consequences. If such general admonishments precluded a finding of prejudice, the United States Supreme Court's holding in *Padilla* would be stripped of much of its force.

We recognize that two Texas courts that have recently considered appeals brought by applicants seeking habeas relief on similar grounds to those presented by appellant concluded that the applicants before them were not prejudiced by the ineffective assistance. *See Ex Parte Vic-*

*torio,* No. 05–11–01008–CR, 2012 WL 286803, at *5 (Tex.App.-Dallas Feb. 1, 2012, no pet. h.); *Ex Parte Tovilla,* No. 14–10–01120–CR, 2012 WL 113049, at *3 (Tex.App.-Houston [14th Dist.] Jan. 12, 2012, no pet. h.) (mem. op.). But these holdings were based on distinguishable facts. For example, in *Ex Parte Tovilla,* the trial court conducted an evidentiary hearing at which it received testimony from the applicant and the two attorneys who represented him during the State's prosecution. 2012 WL 113049, at *1. One of the attorneys testified that because the applicant "was a noncitizen," she had advised him that a conviction "would result or could result in deportation." *Id.* The other attorney testified that after reviewing the file, he advised the applicant concerning the strength of the case, and he negotiated a plea bargain that allowed the applicant to avoid jail time. *Id.* He also testified that he had explained to the applicant that pleading guilty would "amount to a conviction of a deportable offense" and the applicant understood that the "the best scenario was the plea." *Id.* The applicant's testimony differed from that of his attorneys in regard to both the underlying offense and the advice pertaining to immigration consequences. *Id.* And, the applicant merely stated that, if appropriately advised of the immigration consequences, he would have "look[ed] for a good attorney" to "plead [his] case." *Id.* Following the hearing, the trial court denied the requested relief and entered findings that the applicant had been admonished of the possibility of his removal. *Id.* at *2. The trial court further found that, in light of the "overwhelming" evidence of guilt and "lenity of the State's plea offer," it was "highly unlikely" that the applicant would not have pleaded guilty, even if properly advised. *Id.* On appeal, our sister court deferred to the trial court's fact findings, noting that the finding was sup-ported by the testimony of the witnesses and the trial court was the judge of credibility of those witnesses. *Id.* at *3.

Similarly, in *Ex parte Victorio,* the trial court, after conducting a hearing at which the applicant and his two attorneys testified, made a finding that the testimony of the applicant's attorneys was credible and the applicant's contradictory testimony was not. 2012 WL 286803, at *1–2, 4. Moreover, although the applicant denied receiving any information about deportation and stated that he would have gone to trial had he known that he would have been deported, the trial court's written admonishments included a warning stating, "If you are not a citizen of the United States, a plea of guilty or nolo contendere may, and under current Federal Immigration rules *is almost certain to,* result in your deportation, ...." (emphasis in original). *Id.* at *5. The applicant's counsel also testified that he would have explained these plea papers to the applicant, necessarily including the admonishment regarding "almost certain" immigration consequences and deportation. *Id.* at *5–6. Based upon these facts, the court held that the applicant did not demonstrate prejudice under the second prong of the *Strickland.*

■ The facts in the instant case are more similar to those presented to this Court in *Tanklevskaya,* in which we concluded that the applicant demonstrated prejudice. 361 S.W.3d at 91. Unlike the facts presented in *Tovilla* and *Victorio,* here, there is no fact finding from the trial court that appellant was not credible, there is no evidence that counsel indicated that deportation was presumptively "mandatory" or "certain," and there is no admonishment in either the plea papers or from counsel that appellant's guilty plea was *"almost certain"* to result in his deportation. There is also no directly conflicting

testimony provided by appellant's attorney, like that presented in *Tovilla* and *Victorio,* regarding his discussions with appellant during plea proceedings. Accordingly, we hold that appellant has established that, but for his counsel's deficient representation, he would not have pleaded guilty and, as such, he was prejudiced by his counsel's ineffective assistance.

We sustain appellant's sole issue.

## Conclusion

We reverse the order of the trial court denying appellant the relief that he requested in his application for writ of habeas corpus. We set aside appellant's pleas, the order of deferred adjudication, and the judgments entered by the trial court in cause numbers 1612023 and 1618601. We remand the causes to the trial court for further proceedings.