**Opinion issued June 11, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00972-CR

————————————

## EX PARTE ENRIQUE P. GOMEZ, APPELLANT

---

### On Appeal from the 344th District Court
### Chambers County, Texas
### Trial Court Case No. 14571A

---

## MEMORANDUM OPINION

Enrique P. Gomez appeals from the trial court's order denying him habeas

corpus relief pursuant to Article 11.072 of the Texas Code of Criminal Procedure.[1]

---

[1]  *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 8 (West 2005) (providing for appeal in felony or misdemeanor case in which applicant seeks relief from order or judgment of conviction ordering community supervision).

Gomez contends that the trial court erred in denying his ineffective assistance claim, despite his trial counsel's alleged failure to advise him of the immigration consequences associated with his guilty plea in light of *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010). We affirm the trial court's judgment.

## Background

In 2008, Gomez, a legal permanent resident of the United States, pleaded guilty to aggravated assault with a deadly weapon, a motor vehicle. The trial court deferred a finding of guilt and placed Gomez on community supervision for a period of six years. Almost four years later, the Department of Homeland Security, Immigration and Customs Enforcement began removal proceedings against Gomez based on his conviction of a crime involving of moral turpitude for which a sentence of one year or longer may be imposed, within five years after his admission to the United States. *See* 8 U.S.C. § 1227(a)(2)(A)(i) ("Any alien who . . . . is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and . . . for which a sentence of one year or longer may be imposed, is deportable.").[2] Gomez was released from ICE custody on bond.

---

[2] The federal statute does not define "moral turpitude." *See generally* 8 U.S.C. § 1101 (definitions). A guilty plea and term of deferred adjudication community supervision constitutes a conviction for federal immigration law purposes. *See id.* at § 1101(a)(48) (defining "conviction" to include "if adjudication of guilt has been withheld, where . . . the alien has entered a plea of guilty or nolo contendere" and "the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed"); *Moosa v. INS,* 171 F.3d 994, 1005–06 (5th

After receiving notice to appear, Gomez filed his application for writ of habeas corpus. He contended that he received ineffective assistance of counsel in the trial court because his lawyer did not give him specific advice on the immigration consequences of his guilty plea. According to Gomez, his trial counsel "only informed [him] of the general possible immigration consequences and not the virtual certainty and presumptively mandatory removability under the immigration statutes."

At the habeas hearing, Gomez testified that he asked his trial counsel about the immigration consequences of a guilty plea. Counsel told him that, if he satisfied his probation terms, the charges against him would be dropped and that there would be no immigration problems; however, if he committed a crime during his probation, there would be immigration consequences. His counsel did not explain to him that, because he had been a legal permanent resident for less than five years, he would be deported if he pleaded guilty to the offense. Gomez stated that, if his trial counsel had explained that consequence, he would not have accepted the plea agreement.

Gomez's trial counsel testified at the hearing. She testified that she did not recall Gomez, but had looked at the transcript of the plea agreement, the agreed

Cir.1999) (explaining that deferred adjudication after plea of guilty under Texas law is considered conviction for immigration purposes).

punishment recommendation, and the written plea admonishments. She further testified that, through an interpreter, she reviewed the written plea admonishments with Gomez. The admonishments state, "If you are not a U.S. citizen, a plea of guilty or nolo contendere may result in your deportation, exclusion from admission to the county [sic] or denial of your naturalization under federal law." She told him that his plea could affect his immigration status and explained that she does not practice immigration law "so he would have to consult an attorney that deals in immigration." After the hearing, the trial court denied Gomez habeas relief.

## Retroactivity of *Padilla*

In *Padilla v. Kentucky*, the Supreme Court held that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea. 559 U.S. 356, 130 S. Ct. at 1486. Gomez contends that the trial court erred in overruling his ineffective assistance claim, which was based on *Padilla*. The State responds that *Padilla* should not be applied retroactively.

This Court previously held that the ruling in *Padilla* applies retroactively. *See Enyong v. State*, 369 S.W.3d 593, 600 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Ex parte Tanklevskaya*, 361 S.W.3d 86, 95 (Tex. App.—Houston [1st Dist.] 2011), *pet. granted, jgm't vacated*, 393 S.W.3d 787 (Tex. Crim. App. 2013). After we so held, however, the Supreme Court determined that *Padilla* does not

4

apply retroactively. *See Chaidez v. United States*, 133 S. Ct. 1103, 1113 (2013); *see also Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013) ("We adhere to the retroactivity analysis in *Chaidez* and its holding that *Padilla* does not apply retroactively.").

In *Chaidez*, a lawful permanent resident pleaded guilty to two counts of mail fraud, an "aggravated felony" that subjected her to mandatory removal from the United States. Her conviction became final in 2004. *Chaidez*, 133 S. Ct. at 1105–06. In a collateral attack on her conviction, she argued that her trial counsel's failure to advise her of the immigration consequences of pleading guilty constituted ineffective assistance of counsel. *Id.* at 1106. The Supreme Court, confronted with the issue of whether *Padilla* could be applied retroactively, had to decide whether *Padilla* announced a "new rule" because "[o]nly when [the Supreme Court] appl[ies] a settled rule may a person avail herself of the decision on collateral review." *Id.* at 1107.

The Court rejected the argument that *Padilla* merely applied the settled law of ineffective assistance of counsel. *Id.* at 1108–09 (referencing well known standard in *Strickland v. Washington*, 46 U.S. 668, 104 S. Ct. 2052 (1984)). In so holding, the Court stated:

> But *Padilla* did something more. Before deciding if failing to provide such advice "fell below an objective standard of reasonableness," *Padilla* considered a threshold question: Was advice about deportation "categorically removed" from the scope of the Sixth Amendment right

5

to counsel because it involved only a "collateral consequence" of a conviction, rather than a component of the criminal sentence? In other words, prior to asking *how* the *Strickland* test applied ("Did this attorney act unreasonably?"), *Padilla* asked *whether* the *Strickland* test applied ("Should we even evaluate if this attorney acted unreasonably?").

*Id.* at 1108 (citation omitted). By rejecting a categorical distinction between direct and collateral consequences in relation to the right to counsel, the Court resolved the threshold question "by breaching the previously chink-free wall between direct and collateral consequences" before applying the well-settled law of *Strickland*. *Id.* at 1110. "If that does not count as 'break[ing] new ground' or 'impos[ing] a new obligation,' we are hard pressed to know what would." *Id.* Because "*Padilla*'s holding that the failure to advise about a non-criminal consequence could violate the Sixth Amendment would not have been—in fact, was not—'apparent to all reasonable jurists'" before *Padilla*, the Court concluded that *Padilla* announced a "new rule." *Id.* at 1111. As such, "defendants whose convictions became final prior to *Padilla* cannot benefit from its holding." *Id.* at 1113.

In this case, Gomez was convicted two years before *Padilla* was decided. Because *Padilla* announced a "new rule," it is not retroactive and Gomez may not now avail himself of the decision on collateral review. *See Ibarra v. State*, No. 01-12-00292-CR, 2013 WL 1163967, at *2 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet. h.) (concluding that appellant who was convicted twelve years before *Padilla* could not rely on *Padilla* and affirming denial of habeas relief).

6

## Conclusion

Because *Padilla* does not apply retroactively, we affirm the trial court's judgment.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.  TEX. R. APP. P. 47.2(b).