**Opinion issued July 18, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00272-CR

———————————

**KODIGBO ODELUGO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1249648**

---

## MEMORANDUM OPINION

Appellant, Kodigbo Odelugo, without an agreed punishment recommendation from the State, pleaded guilty to the offense of engaging in

organized criminal activity, namely aggregate theft of over $200,000,[1] and the trial court assessed his punishment at confinement for fifteen years.  In three issues, appellant contends that he received ineffective assistance of counsel and the trial court erred in denying his motions to withdraw his guilty plea and for a new trial.

We affirm.

## Background

On February 8, 2010, appellant pleaded guilty to the offense of engaging in organized criminal activity and stipulated to conspiring with Chukwuma Odelogu, Aghaegbuna Odelugo, and Samuel Ezezue, to appropriate over $200,000 owned by Sharon Thompson, Mark Porter, the Texas Health and Human Services Commission, and the Centers for Medicare and Medicaid Services.  The trial court presented appellant with written admonishments, which were signed by appellant and stated, among other things, "If you are not a United States citizen, pleading guilty or no contest to a criminal charge may result in removal, denial of naturalization or exclusion from admission into this country."  During the plea proceedings, and before the trial court accepted appellant's plea, appellant's counsel at the time, Don Becker, told the trial court, "He is competent.  We went through everything with a fine-tooth comb and he's pleading guilty freely and voluntarily and because he is guilty."

---

[1]  *See* TEX. PENAL CODE ANN. § 71.02(a)(1) (Vernon 2011).

2

Before the trial court concluded the subsequently-held sentencing hearing, appellant, a non-citizen, on October 11, 2011, filed a motion to withdraw his guilty plea, arguing that his guilty plea was involuntary because his counsel did not apprise him of the mandatory immigration consequences of his plea.[2] At the December 9, 2011 hearing on his motion to withdraw his plea, appellant testified that he was a Nigerian citizen and permanent resident of the United States. His permanent residency was set to be renewed in 2013, and he had applied for American citizenship as well. Appellant asserted that when he pleaded guilty in February 2010, he had not consulted with Becker regarding the immigration consequences of his plea at any time. Approximately two months prior to filing his motion to withdraw his plea, appellant, on the advice of a prosecutor, consulted with an immigration attorney, who informed him that deportation would be a consequence of pleading guilty. Appellant then asserted that he wished to withdraw his plea so that he could take his case to trial.

Becker testified that he did not specifically remember speaking with appellant about the immigration consequences of his plea. However, Becker explained that in his initial interview with clients "obviously born in a foreign country," he would "always discuss immigration consequences." Specifically, Becker would always inform such defendants that, if they pleaded guilty, they

---

[2] *See Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010).

would be deported or removed from the country involuntarily. Becker noted that this had been his practice since 1996, he was prepared to take appellant's case to trial, but appellant chose to plead guilty.

Emmanuel Nwuli, an immigration attorney, testified that he had consulted with appellant and his brother, Aghaegbuna Odelugo. Nwuli explained that he discussed "immigration matters" with both appellant and Aghaegbuna after they had been indicted. Appellant retained Nwuli for representation during the naturalization process, and Nwuli filed appellant's naturalization papers, but he did not "specifically" have a discussion with appellant about the consequences of the pending case on appellant's immigration status. Nwuli did inform appellant, before he entered his plea, that the United States Immigration and Naturalization Service "would not make a determination until they know the outcome of this case pending." Nwuli explained that he did not discuss the immigration consequences of appellant's guilty plea because he did not represent appellant "on criminal matters."

After hearing the evidence, the trial court denied appellant's motion to withdraw his plea, stating,

> You know, if the Supreme Court wanted to make a checklist for the immigration lawyer to fill out before somebody can plead guilty in the criminal court, we've gotten to an unreasonable circumstance. I think it's—common sense says by the time you go to an immigration lawyer, first lawyer already told you you're going to be deported and

4

> then you go to an immigration lawyer, I don't know what more we could ask for. So . . . I'm denying your motion to withdraw your plea.

On March 5, 2012, the trial court later concluded the sentencing hearing and assessed appellant's punishment at confinement for fifteen years.

Appellant, on March 26, 2012, filed a new-trial motion, arguing that he was denied effective assistance of counsel during his plea proceedings because Becker did not "investigate the underlying facts before advising [him] to plead guilty" and there existed "exculpatory evidence which counsel could have found if he had investigated the facts of the case." Appellant also asserted that Becker did not provide him with "competent legal advice regarding the potential immigration consequences" of his plea, but rather provided him only a "boiler plate" admonishment.

Appellant attached to his new-trial motion his affidavit, in which he testified that Becker did not tell him that his plea of guilty would result in his deportation. Appellant was unable to contact Becker for three months before Becker appeared on appellant's trial date. Although appellant requested a trial continuance so that he could discuss the case with Becker, the trial court denied his request. Becker then told appellant he had ten minutes to decide whether to plead guilty or go to trial. And appellant explained that he decided to plead guilty after Becker informed him that the trial court would defer adjudication of appellant's guilt and place him on community supervision.

5

Appellant further testified that he first heard about the immigration consequences of his plea when a prosecutor approached his post-plea attorney, Vivian King, and asked whether appellant had been informed of the immigration consequences of his plea. When he responded that he had not, King filed a motion to withdraw his plea, and appellant consulted with an immigration attorney who informed him that his plea "would definitely result" in deportation. Appellant noted that although Nwuli represented him in his naturalization proceedings, Nwuli did not discuss with him the immigration consequences of his guilty plea. Appellant also attached to his new-trial motion an affidavit from Nwuli, who testified that he "did not discuss any other immigration issues and consequences relative to felony cases to the best of my knowledge with [appellant]."

At the May 14, 2012 hearing on appellant's new-trial motion, King asserted that appellant had not been advised of the immigration consequences of his guilty plea until after he had entered it and she recommended that he speak with an immigration attorney. King "reurg[ed] the fact [that appellant] did not know the consequences of the plea" and asked that he be granted a new trial. The trial court then denied appellant's motion.

## Standard of Review

Generally, we review a trial court's denial of a motion for a new trial under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim.

6

App. 2001). However, "where the trial court 'is not in an appreciably better position' than the appellate court to decide the issue, the appellate court may independently determine the issue while affording deference to the trial court's findings on subsidiary factual questions." *Villareal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) (McCormick, P.J., concurring) (citing *Miller v. Fenton*, 474 U.S. 104, 110–17, 106 S. Ct. 445, 450–53 (1985)); *see Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). We note that trial courts remain in the best position to "evaluate the credibility" of witnesses and resolve conflicts in evidence. *See Kober*, 988 S.W.2d at 233. And a trial court may choose to believe or disbelieve all or any part of the witnesses' testimony. *Id.* at 233.

In determining whether a guilty plea is voluntary, we consider the record as a whole. *Fimberg v. State*, 922 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (citing *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975)). A record that indicates that a trial court properly admonished a defendant presents a prima facie showing that the guilty plea was made voluntarily and knowingly. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Arreola v. State,* 207 S.W.3d 387, 391 (Tex. App.—Houston [1st Dist.] 2006, no pet.). When the record presents a prima facie showing that the plea was entered voluntarily and knowingly, the burden shifts to the defendant to show that he entered the plea without understanding the consequences of the plea. *Edwards v.*

7

*State*, 921 S.W.2d 477, 479 (Tex. App.—Houston [1st Dist.] 1996, no pet.). An accused who attests when he enters his plea of guilty that he understands the nature of his plea and that it is voluntary has a heavy burden on appeal to show that his plea was involuntary. *Id.* However, a guilty plea is not voluntary if made as a result of ineffective assistance of counsel because it does not represent an informed choice. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980).

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1480–81 (2010). Courts have "long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Id.* at 1486; *see also Ex parte Reedy,* 282 S.W.3d 492, 500 (Tex. Crim. App. 2009) ("There is no doubt that an accused has a Sixth Amendment right to the effective assistance of counsel in guilty plea proceedings."). To provide effective assistance during plea proceedings, "counsel has a duty to render his best judgment to his client about what plea to enter, and that judgment should be informed by an adequate and independent investigation of the facts of the case." *Ex parte Reedy*, 282 S.W.3d at 500. "Specifically, when a person challenges the validity of a plea entered upon the advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of

8

attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty." *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010) (quotations omitted).

Plea counsel's performance is deficient if counsel fails to advise a noncitizen defendant about deportation consequences that are "truly clear."[3] *See Padilla*, 130 S. Ct. at 1483; *Aguilar v. State*, 375 S.W.3d 518, 524 (Tex. App.—Houston [14th Dist.] 2012), *vacated on other grounds*, 393 S.W.3d 787 (Tex. Crim. App. 2013). Thus, plea counsel is deficient if counsel merely mentions the possibility of deportation when the relevant immigration provisions are presumptively mandatory. *See Aguilar*, 375 S.W.3d at 524 (citing *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011)). However, when the law is not clear "a criminal defense attorney need do no more than advise a noncitizen client that pending

---

[3] We note that, since the United States Supreme Court's ruling in *Padilla*, the Court has held that its holding does not extend retroactively to "defendants whose convictions became final prior to *Padilla*." *See Chaidez v. United States*, ___ U.S. ___, 133 S. Ct. 1103, 1113 (2013). The Texas Court of Criminal Appeals has since adopted the Supreme Court's ruling in *Chaidez*. *Ex Parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013). Here, although appellant initially pleaded guilty on February 8, 2010, almost two months before the Supreme Court's ruling in *Padilla*, the trial court had not concluded its sentencing of appellant. Appellant filed a motion to withdraw his plea on October 11, 2011, the trial court sentenced appellant on March 5, 2012, and appellant filed a new-trial motion on March 26, 2012. And the State has not argued that *Padilla* would not apply to appellant's conviction. Thus, we proceed to address the merits of appellant's *Padilla* contentions.

9

criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 130 S. Ct. at 1483.

## Voluntariness of Plea

In his first issue, appellant argues that the trial court erred in denying his motion to withdraw his guilty plea because it "was not voluntarily and intelligently entered" and "his plea attorney failed to apprise him about the mandatory immigration consequences of his plea." In his second and third issues, appellant argues that the trial court erred in denying his new-trial motion because plea counsel did not provide effective assistance and failed to adequately apprise him of the immigration consequences of his plea.[4]

A defendant may file a motion to withdraw his guilty plea, asserting that his plea was not freely and voluntarily entered or he was not aware of the consequences of his plea. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp. 2012). A defendant may withdraw his guilty plea for any reason as a matter

---

[4] A motion to withdraw a guilty plea is functionally indistinguishable from a motion for new trial. *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston 1996, pet. ref'd) (citing *State v. Evans*, 843 S.W.2d 576, 578 (Tex. Crim. App. 1992)). Although appellant challenges the trial court's denial of his motion to withdraw his guilty plea and his new-trial motion in separate issues, all his issues concern whether he entered his plea voluntarily and whether his plea counsel was effective in adequately informing him of the immigration consequences of his plea. Accordingly, we address his issues together. *See id.*; *see also Scott v. State*, No. 01-01-00726-CR, 2002 WL 31122165, at *3 (Tex. App.—Houston [1st Dist.] Sept. 26, 2002, pet. ref'd) (not designated for publication) ("We review appellant's motion for new trial as a motion to withdraw a guilty plea, from which it is indistinguishable.").

10

of right until judgment has been pronounced or the case has been "taken under advisement." *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979). However, when a defendant decides to withdraw his guilty plea after the trial judge takes the case under advisement or pronounces judgment, the withdrawal of such plea is within the sound discretion of the trial court. *State v. Ellis*, 976 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1998, no pet.). A case is under advisement after each side has concluded its case-in-chief, the defendant has entered a plea of guilty, the plea has been accepted, and the necessary admonishments have been given, even though the issue of punishment remains. *See Thompson v. State*, 852 S.W.2d 268, 270 (Tex. App.—Dallas 1993, no pet.).

Here, appellant pleaded guilty to committing the offense of engaging in organized criminal activity, namely, aggregate theft of over $200,000, which has a sentencing range of confinement for five years to life. *See* TEX. PENAL CODE ANN. § 31.03(e)(7) (Vernon 2011) (naming theft of over $200,000 as first-degree felony); *id.* § 12.32(a) (Vernon 2009) (setting punishment range for first-degree felonies). The United States Immigration and Nationality Act provides that any alien who is convicted of an aggravated felony at any time after admission is deportable. 8 U.S.C. § 1227(a)(2)(A)(iii). A conviction for "aggravated felony" includes a conviction for theft for which the term of imprisonment is at least one year. *Id.* § 1101(a)(43)(G). Because the minimum sentence that appellant could

11

have received was confinement for five years, he was convicted of an "aggravated felony" rendering him deportable under the Immigration and Nationality Act.

As in *Padilla*, the deportation consequences of appellant's conviction were "succinct, clear, and explicit" and trial counsel was required to inform him of those consequences. *See Padilla*, 130 S. Ct. at 1483. At the hearing on appellant's motion to withdraw his plea, appellant testified that neither his plea counsel, Becker, nor any other lawyer, consulted with him regarding the immigration consequences of his guilty plea. Instead, appellant did not learn of the immigration consequences of his plea until after he had entered it and spoken with an immigration lawyer at the suggestion of a prosecutor. And Becker admitted that on the day that appellant entered his plea, he "probably" did not consult with appellant about the immigration consequences "beyond the admonishments" that appellant signed along with his plea. These admonishments generally stated that a noncitizen's guilty plea "may result in removal, denial of naturalization or exclusion from admission into this country." Such general admonishments have been found to be insufficient to discharge plea counsel's duty. *See Padilla*, 130 S. Ct. at 1482–84, 1486; *Enyong v. State*, 369 S.W.3d 593, 602 (Tex. App.—Houston [1st Dist.] 2012), *vacated on other grounds*, 397 S.W.3d 208 (Tex. Crim. App. 2013); *see also United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more

12

than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty.") (emphasis in original).

However, although Becker testified that he did not specifically recall informing appellant of the immigration consequences of his plea, he explained that, beginning in 1996, his "common procedure" upon first meeting with a client was to "always discuss immigration consequences." He routinely told his noncitizen clients that if they entered guilty pleas, then they would be deported or removed from the country involuntarily. Becker gave this information to "all of [his] potential clients [he] might believe have that citizenship issue," and appellant would have "fall[en] under those parameters." The trial court, as fact-finder, could have reasonably believed Becker's testimony that he "always" discussed the immigration consequences of a plea with non-citizen clients like appellant and disbelieved appellant's testimony that Becker did not so inform him. *See, e.g., Charles v. State*, 146 S.W.3d 204, 213 ("[T]he trial judge could have reasonably disbelieved some or all of the affiants' statements, found them inconclusive, contradictory, internally inconsistent, or ambiguous."); *Fimberg v. State*, 922 S.W.2d 205, 208 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding that trial court did not err in denying new-trial motion because trial court could have believed counsel's testimony over defendant's contradictory testimony). And the

trial court impliedly found that it believed Becker's testimony and did not believe appellant's testimony, stating,

> I think it's—common sense says by the time you go to an immigration lawyer, *first lawyer already told you you're going to be deported* and then you go to an immigration lawyer, I don't know what more we could ask for. So . . . I'm denying your motion to withdraw your plea.

(Emphasis added).

In support of his argument, appellant relies on *Enyong* and *Ex Parte Tanklevskaya*, 361 S.W.3d 86 (Tex. App.—Houston [1st Dist.] 2011), *vacated*, 393 S.W.3d 787 (Tex. Crim. App. 2013). However, in both *Enyong* and *Tanklevskaya*, the defendants' plea counsel testified that if they consulted with their clients, they would have only informed them of the general immigration consequences found in the admonishments that their clients "may" be subject to deportation. *Enyong*, 369 S.W.3d at 599; *Tanklevskaya*, 361 S.W.3d at 96. Here, however, the trial court could have reasonably believed Becker's testimony that, as a matter of routine, he would have informed appellant that if he entered a plea of guilty, he would in fact be deported or removed from the country involuntarily.

In his affidavit testimony, attached to his new-trial motion, appellant stated further that he could not actually communicate with Becker for three months and he felt pressured into pleading guilty. However, appellant argues that the trial court erred in denying his new-trial motion only on the ground that he entered his plea involuntarily because he was not informed of the immigration consequences

14

of his plea. Moreover, as noted above, the trial court was entitled to disbelieve appellant's affidavit testimony. *See, e.g., Charles*, 146 S.W.3d at 213.

Accordingly, we hold that the trial court did not abuse its discretion in denying either appellant's motion to withdraw his guilty plea or his new-trial motion.

We overrule appellant's first, second, and third issues.

## Conclusion

We affirm the judgment of the trial court.



Terry Jennings
Justice

Panel consists of Justices Jennings, Brown, and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).

15