# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 17, 2012 Session

## ALVERAZ RAMIREZ RIGOBERTO AKA RIGOBERTO A. RAMIREZ v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Williamson County**
**No. CR075801    Timothy L. Easter, Judge**

---

**No. M2011-02690-CCA-R3-PC - Filed December 10, 2012**

---

The Petitioner, Alveraz Ramirez Rigoberto, appeals the Williamson County Circuit Court's denial of his petition for post-conviction relief from his convictions of simple possession of marijuana; misdemeanor evading arrest; and driving on a revoked license, sixth offense, and resulting sentences of eleven months, twenty-nine days to be served concurrently on supervised probation. On appeal, the Petitioner contends that he is entitled to post-conviction relief because trial counsel failed to advise him about the consequences of his guilty pleas, which resulted in his entering his pleas unknowingly and involuntarily. Based upon the oral arguments, the record, and the parties' briefs, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Caesar Cirigliano and Divyesh R. Gopal, Nashville, Tennessee, for the appellant, Alveraz Ramirez Rigoberto.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Kim R. Helper, District Attorney General; and Terry Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The record reflects that in May 2010, the Petitioner, a citizen of Mexico, was charged

with felony possession of more than one-half ounce of marijuana for resale; felony evading arrest; possession of drug paraphernalia; driving on a revoked license, sixth offense; and reckless driving. On July 13, 2010, he pled guilty to simple possession of marijuana; evading arrest; and driving on a revoked license, sixth offense, all Class A misdemeanors. Pursuant to the plea agreement, the Petitioner received three sentences of eleven months, twenty-nine days to be served concurrently on supervised probation. Subsequently, counsel for the Petitioner filed a timely petition for post-conviction relief, arguing that he received the ineffective assistance of counsel because trial counsel failed to advise him about the immigration consequences of his guilty pleas as required by Padilla v. Kentucky, 130 S. Ct. 1473 (2010). The Petitioner also alleged that his receiving the ineffective assistance of counsel resulted in his pleas being unknowing and involuntary.

According to the petition, on the day the Petitioner entered his guilty pleas, he was transferred to Immigration and Customs Enforcement (ICE). Three days later, he was detained at the Federal Detention Center in Oakdale, Louisiana, and released under an immigration bond. In the petition, the Petitioner stated, "Due to the above-referenced convictions, the defendant is not eligible for immigration waiver and has a relief from deportation under current Immigration Statutes, but for the conviction, the defendant will be denied relief."

The post-conviction court found that the petition stated a colorable claim and scheduled an evidentiary hearing. At the hearing, neither party introduced a transcript of the guilty plea hearing because the plea hearing was not transcribed. Trial counsel testified for the Petitioner that she met him and his fiancé through counsel's sixteen-year-old daughter, who babysat the Petitioner's and his fiancé's children. When the Petitioner was charged with driving on a revoked license and violating probation, counsel represented him in those cases. Counsel said that the Petitioner "got in trouble with this case" and that he retained her to represent him again. The Petitioner was arrested in this case just days before the United States Supreme Court filed Padilla, and he was the first non-citizen that counsel represented after the Court filed its opinion.

Counsel testified that she knew the Petitioner was in this country illegally and that she thought convictions for felony possession of marijuana and felony evading arrest would affect his immigration status. When the Petitioner was arrested and jailed in this case, an immigration hold was placed on him. Counsel said that "deportation was highly likely" and that "we had further discussions about that." When asked if she discussed with the Petitioner how misdemeanor convictions could affect his immigration status, she said, "No, that would not have been something that was within my knowledge as an attorney; I would have -- I did refer him to an immigration attorney prior to taking the plea." She also stated that

if I had gotten into that with him, I feel like it's very outside the scope of my expertise, and I could have very well misguided him, because I do not have knowledge of immigration law, and that's why I referred him to someone that would have adequate knowledge of that to be able [to] answer all of those questions.

Counsel testified that she gave the Petitioner the contact information for two immigration attorneys. Counsel did not consult with the immigration attorneys herself, and she did not ask the Petitioner if he consulted with them. The Petitioner was given the option to plead guilty to the misdemeanor offenses or go to trial and risk being convicted of felonies. Counsel stated, "With those options in front of him, he chose to plead to the misdemeanors." Counsel said she did not use an interpreter to communicate with the Petitioner because he spoke fluent English and never indicated that he did not understand her. The Petitioner had difficulty reading English, so counsel read the plea agreement to him prior to his guilty pleas. Toward the conclusion of trial counsel's testimony, post-conviction counsel asked, "[A]t no point did you have a real discussion regarding immigration consequences; correct?" Trial counsel answered,

I knew -- yes, we had the discussion that he had an INS hold, and that he would be -- he would be taken from here to a deportation center, and we assumed that that would be Louisiana, yes, we did talk about that. And then once in Louisiana he may or may not get bond, and that he would have a hearing there, and that that would determine whether he was deported or not, again, please consult an immigration attorney, but we did have that limited discussion.

Counsel said that she and the Petitioner discussed what he was going to do if he were deported; the Petitioner was planning to stay with his mother in Mexico. The Petitioner's fiancé told counsel that she and the children were going to visit him there so that he could maintain a relationship with his biological son.

On cross-examination, trial counsel testified that she discussed the Petitioner's immigration status with the district attorney's office and that she asked to "negotiate this to misdemeanors." She acknowledged that she thought it would be easier to help the Petitioner after he was deported if he was convicted of misdemeanors rather than felonies.

Laura Noss, the Petitioner's fiancé, testified that she and the Petitioner had a son together. In previous cases, trial counsel had recommended that the Petitioner consult with an immigration attorney. However, counsel never recommended that he consult with an

immigration attorney in this case. When asked if counsel advised the Petitioner about the immigration consequences of his guilty pleas in this case, Noss said that counsel "wasn't sure[.] . . . [W]hat [counsel] assumed was if it was a misdemeanor, then for immigration purposes he would be able to somehow come back if he was deported. The deportation was still in question, was not sure about that, but thought [deportation] could be likely because of the ICE hold." Noss said the "main . . . concern" was the Petitioner's being able to come back to the United States if he were deported. Counsel thought the misdemeanor convictions would not prevent the Petitioner from returning to this country.

On cross-examination, Noss testified that trial counsel did not know the "exact law" regarding the immigration consequences of the Petitioner's guilty pleas. Counsel thought that if the Petitioner pled guilty to misdemeanors and was deported, he would be able to return to the United States legally.

On redirect examination, Noss acknowledged that she thought the Petitioner would be released from jail after his guilty pleas. Instead, he remained in custody.

The Petitioner testified through an interpreter that he had been in the United States since 1999. The Petitioner was arrested in this case on March 28, 2010, and counsel visited him twice in jail. The Petitioner acknowledged that counsel met with him before his plea hearing and that they talked about deportation. The Petitioner explained, "I didn't know if they were going to deport me or not, but yeah, we talked about that." The Petitioner did not know if pleading guilty to misdemeanors would hurt or help his chances of being deported. Counsel read the plea agreement to the Petitioner, and he understood it. The Petitioner was expecting to be released from custody after his plea hearing. However, counsel telephoned the jail, inquired into the Petitioner's immigration hold, and learned he was going to be deported.

On cross-examination, the Petitioner acknowledged that an immigration hold was in place prior to his guilty pleas and that counsel advised him the guilty pleas could affect his deportation status. He said he talked with trial counsel about his living with his mother in Mexico. On redirect examination, the Petitioner testified that their conversation about his living with his mother occurred after his guilty pleas.

Trial counsel was recalled to testify for the State and said, "From early on in this case we knew that he had an immigration hold." Counsel stated that she referred the Petitioner to two immigration attorneys and that "I advised him that a plea in this case could result in problems with his immigration status." She said she also advised him on the day of the plea hearing that "if he were to make bond after he was taken down to the holding center in Louisiana . . . that when he came back to Franklin, he would need to report to his probation

-4-

officer immediately, because he was on probation here." She said that she never told the Petitioner "the misdemeanors were some sort of a win or ah-ha, you're going to get out of jail now" and that "[t]here was no way for him to get out of jail here unless the people that work for ICE did not come pick him up. . . . [R]egardless if it was a misdemeanor or a felony; that simply wasn't up to me."

In a written order, the post-conviction court noted that the Petitioner did not need an interpreter during the evidentiary hearing because "[m]any times the Petitioner would answer a question in English without waiting for the interpretation. . . . It was clear that the Petitioner understood and spoke the English language fluently, just as [trial counsel] had testified." The court found that the Petitioner had "little to no credibility" and concluded that trial counsel complied with Padilla because she advised the Petitioner about "the risk of adverse [immigration] consequences his plea would carry." The court stated that trial counsel's testimony clearly and convincingly satisfied the court that the Petitioner understood his actions at the guilty plea hearing and that he pled guilty voluntarily. The court denied the petition for post-conviction relief.

## II. Analysis

The Petitioner claims that the post-conviction court erred by denying his petition for post-conviction relief because trial counsel failed to advise him about the immigration consequences of his guilty pleas as required by Padilla, which resulted in his entering his pleas unknowingly and involuntarily. Specifically, the Petitioner argues that counsel failed to advise him that his guilty pleas would render him deportable and that she incorrectly thought he would be able to re-enter the United States if he was deported. The State argues that the court properly denied the petition. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsels errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Padilla involved a defendant who was a lawful permanent resident of the United States and was facing deportation after pleading guilty to transporting a large amount of marijuana in a tractor-trailer. 130 S. Ct. at 1477. In Padilla, the United States Supreme Court addressed whether counsel renders deficient performance when counsel fails to advise a defendant about the immigration consequences of a guilty plea. Specifically, the Court held for the first time that trial counsel renders deficient performance when counsel fails to advise a defendant that the defendant's guilty plea carries a risk of deportation. Id. at 1486. Moreover,

> [t]he Court clarified that when the relevant immigration law is

'not succinct and straightforward,' defense counsel need only 'advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences'; however, when the deportation consequences are "truly clear," counsel has an "equally clear" duty to give correct advice.

Ex parte Tanklevskaya, 361 S.W.3d 86, 90 (Tex. App. 2011) (quoting Padilla, 130 S. Ct. at 1483). Misadvice or silence about the immigration consequences of a guilty plea can result in the ineffective assistance of counsel. Padilla, 130 S. Ct. at 1484.

In addition to deportation, an alien's guilty plea can render him or her unable to re-enter the United States. Relevant to this case, section 1182(a)(2)(A)(i)(II) of Title 8 of the United States Code provides that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a violation of . . . any law or regulation of a state . . . relating to a controlled substance is inadmissible." 8 U.S.C.S. § 1182(a)(2)(A)(i)(II). Therefore, a defendant's guilty plea to simple possession of marijuana would make the defendant "presumptively inadmissible" if he or she attempted to return to this country. Ex parte Tanklevskaya, 361 S.W.3d at 96. "In certain circumstances, the Attorney General may, in his discretion, waive the application of this inadmissibility requirement 'insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana.'" Id. (quoting 8 U.S.C.S. § 1182(h)).

Regarding the Petitioner's claim that counsel failed to advise him properly about the deportation consequences of his guilty pleas, the post-conviction court specifically accredited trial counsel's testimony. Trial counsel testified that she told the Petitioner deportation was "highly likely." Therefore, we agree with the post-conviction court that the Petitioner has failed to show that counsel's performance was deficient. Moreover, unlike Mr. Padilla, the Petitioner was an illegal alien and was deportable for that reason alone. In fact, ICE had placed an immigration hold on him prior to his guilty pleas. Therefore, even if counsel failed to advise him about the effect of his guilty pleas on his deportability, he cannot show prejudice because he cannot demonstrate that his deportability status was a consequence of his guilty pleas. See United States v. Hermilo Benitez Serrato, Crim. No. H-11-0169, Civ. No. H-12-2018, 2012 U.S. Dist. LEXIS 100734, at *6 (S.D. Tex. July 18, 2012); United States v. Francisco Perea, Crim. No. 08-20160-08-KHV, Civ. No. 11-2218-KHV, 2012 U.S. Dist. LEXIS 32124, at **13-14 n.4 (D. Kan. Mar. 8, 2012); United States v. Juan Correa-Gutierrez, 8:08CR267, 2011 U.S. Dist. LEXIS 53017, at *3 (D. Neb. May 17, 2011); United States v. Jorge Medina Aceves, Civ. No. 10-00738 SOM/LEK, Crim. No. 08-00501 SOM, 2011 U.S. Dist. LEXIS 27813, at * 14 (D. Haw. Mar. 17, 2011); Jean-Marie Vianney Mudahinyuka v. United States, No. 10 C 5812, 2011 U.S. Dist. LEXIS 11588, at *13 (N.D. Ill. Feb. 7, 2011); United States v. Fredy Armondo Gutierrez-Martinez, Crim. Action No.

07-91(5) ADM/FLN, Civ. Action No. 10-2553-ADM, 2010 U.S. Dist. LEXIS 134052, at *10 (D. Minn. Dec. 17, 2010); People v. Vielka Garcia, 4902/02, 2011 N.Y. Misc. LEXIS 3997, at *10 (N.Y. Sup. Ct., July 26, 2011).

We note that during oral argument, the Petitioner also claimed that trial counsel had a responsibility to negotiate a plea agreement that lessened his risk of deportation. In Padilla, the Supreme Court recognized that

> [c]ounsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence. At the same time, the threat of deportation may provide the defendant with a powerful incentive to plead guilty to an offense that does not mandate that penalty in exchange for a dismissal of a charge that does.

130 S. Ct. at 1486. However, given that the Petitioner was subject to deportation regardless of any negotiated plea agreement in this case, we again hold that he cannot show prejudice.

Next, we will address the Petitioner's claim that trial counsel misadvised him regarding the effect of his guilty pleas on his ability to re-enter the United States. Trial counsel testified that she told the Petitioner to consult with an immigration attorney but that she did not talk with the attorney herself and did not talk with the Petitioner about the attorney's advice. Trial counsel also testified that she worked with the district attorney's office to negotiate pleas to misdemeanors because she thought pleading guilty to misdemeanors, as opposed to felonies, would help the Petitioner. However, pursuant to section 1182(a)(2)(A)(i)(II) of Title 8 of the United States Code, the Petitioner's guilty plea to simple possession of marijuana rendered him presumptively unable to re-enter the United States legally. It was trial counsel's duty to investigate and properly advise him about the consequences of his guilty pleas, including his presumptive inability to re-enter this country. Counsel made no attempt to do that in this case. Given that counsel failed to investigate and properly advise the Petitioner, we conclude that counsel rendered deficient performance.

We must now determine whether the Petitioner was prejudiced by counsel's deficiency. At the evidentiary hearing, counsel for the Petitioner questioned him only about trial counsel's failure to advise him regarding the deportation consequences of his guilty pleas. Post-conviction counsel never questioned him about trial counsel's failure to advise

-8-

him regarding his future re-entry into the United States. As a result, the Petitioner never testified about the effect of counsel's misadvice or lack of advice on his decision to plead guilty and never stated that he would not have entered his pleas had he known they would affect his ability to re-enter this country. Therefore, we conclude that the Petitioner has failed to demonstrate that he was prejudiced by counsel's failure to advise him that his guilty pleas would make him presumptively ineligible for future admissibility into the United States.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the post-conviction court's denial of the petition for post-conviction relief.


_____
NORMA McGEE OGLE, JUDGE